[Sac. No. 7525. In Bank. May 19, 1964.]

MALCOLM E. HARRIS, as Director of the Department of Alcoholic Beverage Control, Plaintiff and Appellant, v. ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD, Defendant and Respondent; SCHENLEY INDUSTRIES, INC. et al., Real Parties in Interest and Respondents.

306

[black redaction box]

Stanley Mosk, Attorney General, and Wiley W. Manuel, Deputy Attorney General, for Plaintiff and Appellant.

Charles P. Just for Defendant and Respondent.

Bronson, Bronson & McKinnon, Anthony J. Kennedy and George K. Hartwick for Real Parties in Interest and Respondents.

PEEK, J.—Malcolm E. Harris, Director of the Department of Alcoholic Beverage Control, appeals from an order denying the department's petition for a writ of mandate to compel the Alcoholic Beverage Control Appeals Board to set aside its decision reversing certain orders of the department denying petitions for the transfer and reissuance of distilled spirits wholesaler's and importer's licenses and ordering the revocation of those licenses.

It is stipulated that prior to 1955 Park & Tilford Distillers Corporation, a licensed manufacturer of distilled spirits, also held both a distilled spirits wholesale and a distilled spirits import license. Section 23771 of the Business and Professions Code[1] provided then, as it does now, that a manufacturer of distilled spirits may hold only a distilled spirits manufacturer's license, and section 23772[2] prohibited then, as it does now, a manufacturer from holding any interest, directly or

---

[1]Section 23771 of the Business and Professions Code provides: ''No distilled spirits license of any kind, except a distilled spirits manufacturer's or a distilled spirits manufacturer's agent's license, shall be issued to any person, or to any officer, director, employee, or agent of any person, who manufactures distilled spirits within or without this State.''

[2]Section 23772 of the Business and Professions Code provides: ''No distilled spirits manufacturer's or distilled spirits manufacturer's agent's license shall be held by any person who holds any ownership or interest, directly or indirectly, by stock ownership, interlocking directors, trusteeship, loan, mortgage, or lien on any personal or real property, or otherwise, in any distilled spirits wholesaler's, rectifier's, or retailer's license. . . .''

indirectly, in a wholesaler's license. However, those sections were avoided by Park & Tilford Distillers Corporation pursuant to an exception in section 23774, which likewise provided then as it does now: "The provisions of sections 23771 and 23772 do not prevent the issuance of a distilled spirits wholesale license to any person who, on July 1, 1937, owned or operated a business which for five years immediately preceding that date had maintained and operated in this State a bona fide jobbing and distributing establishment for the sale to retail dealers of goods, wares, and merchandise, the major portion of which business ... was ... other than alcoholic beverages." Park & Tilford Distillers Corporation did not itself qualify under section 23774, but because a wholly-owned subsidiary corporation, Park & Tilford, did qualify under section 23774, the wholesale license could properly issue to and be held by the parent corporation. It further appears that because Park & Tilford Distillers Corporation held the wholesale license, an import license could also issue to and be held by it. (Bus. & Prof. Code, § 23775.)

In 1955 Schenley Industries, Inc., also a manufacturer of distilled spirits, purchased all the stock of Park & Tilford Distillers Corporation. In 1958 Park & Tilford Distillers Corporation was merged with Schenley, the subsidiary Park & Tilford continuing to have separate identity as a subsidiary of the merged corporations. At this time both Schenley and Park & Tilford applied to the Department of Alcoholic Beverage Control for transfers of the wholesale and import licenses of Park & Tilford Distillers Corporation. Both applications were rejected and thereafter both Schenley and Park & Tilford petitioned the department for the licenses pursuant to section 24011 of the Business and Professions Code.

On August 18, 1959, the department filed an accusation against Park & Tilford Distillers Corporation, charging that it was not the sole and true owner of its wholesale and import licenses; that in fact Schenley had been permitted to hold the ownership and to exercise the privileges of those licenses without being authorized to do so by the department, that Schenley had been allowed through its stockholder's interests to exercise rights in the licenses, and that Schenley had been allowed to hold such interest in violation of sections 23771 and 23772 of the Business and Professions Code. The department further charged the licensee with having quit and abandoned its premises and thereafter failing to sur-

render its licenses within the time required by rule 65 of the department. (Cal. Admin. Code, tit. 4, § 65.) This matter and the two pending petitions were consolidated for hearing before the department, after which the licenses were revoked, and the petitions denied.

Upon appeal, the respondent Alcoholic Beverage Control Appeals Board ordered the department to dismiss the accusations, deny the application of Schenley and grant the application for transfer of the licenses to Park & Tilford.

The department then sought the instant writ of mandate, charging that the board's action was arbitrary and capricious; that the granting of a wholesale license to Park & Tilford would be contrary to the public welfare and morals within the meaning of section 22 of article XX of the Constitution,[3] and in violation of sections 23771 and 23772 of the Business and Professions Code. The department sought by the writ to compel the board to affirm the department's orders denying the applications for transfer and revoking the licenses. An alternative writ issued but, following a hearing, was discharged and the peremptory writ denied.

---

[3]Section 22 of Article XX, provides in part ''. . . The department shall have the power, in its discretion, to deny, suspend or revoke any specific alcoholic beverages license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals, ... When any person aggrieved thereby appeals from a decision of the department ordering any penalty assessment, issuing, denying, transferring, suspending or revoking any license for the manufacture, importation, or sale of alcoholic beverages, the board shall review the decision subject to such limitations as may be imposed by the Legislature. ... Review by the board of a decision of the department shall be limited to the questions whether the department has proceeded without or in excess of its jurisdiction, whether the department has proceeded in the manner required by law, whether the decision is supported by the findings, and whether the findings are supported by substantial evidence in the light of the whole record. In appeals where the board finds that there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing before the department it may enter an order remanding the matter to the department for reconsideration in the light of such evidence. In all other appeals the board shall enter an order either affirming or reversing the decision of the department, the board may direct the reconsideration of the matter in the light of its order either affirming or reversing the decision of the department. When the order reverses the decision of the department, the board may direct the reconsideration of the matter in the light of its order and may direct the department to take such further action as is specially enjoined upon it by law, but the order shall not limit or control in any way the discretion vested by law in the department. . . .''.

 The basic problem relates to the application of sections 23771, 23772 and 23774 of the Business and Professions Code to the instant circumstances, that is: can Schenley, as a corporation acquiring the assets of another by merger therewith, also acquire the right, directly or indirectly, to possess those licenses of the merged corporation which, pursuant to an expression of public policy by the Legislature, it would not otherwise be able to possess? The answer would seem to lie in the fundamental reasons which dictated the legislative policy, and whether the holding or transfer of the licenses would infringe on that policy.

In prohibiting the holding of multiple licenses the Legislature has inferentially declared that the public policy is best served if all persons engaged in the handling of alcoholic beverages, whether manufacturing, wholesaling, importing or retailing be kept distinct and apart. Such a policy is not peculiar to California alone. Federal law prohibits the making of exclusive outlet and "tied house" agreements (27 U.S.C.A. § 205, subds. (a), (b)) and interlocking directorates (§ 208). Among the purposes of such prohibitions is the prevention of integration of wholesale and retail outlets, and the imposition of quotas on retailers. (*Levers* v. *Berkshire,* 151 F.2d 935; *Black* v. *Magnolia Liquor Co.,* 355 U.S. 24 [78 S.Ct. 106, 2 L.Ed.2d 5].)

In considering provisions similar to those here involved, the Texas Court of Civil Appeals stated that "The Legislature in enacting the Texas Liquor Law . . . expressly determined that the liquor traffic in this state would be best controlled by keeping the various levels of the liquor industry independent of each other. . . ." (*Texas Liquor Control Board* v. *Continental Distilling Sales Co.* (Tex. Civ. App. 1947) 199 S.W.2d 1009, 1014; see also *Downer* v. *Liquor Control Com.,* 134 Conn. 555 [59 A.2d 290].)

While similar policies are apparent in the statutory provisions in the instant case it is also manifest that the Legislature deemed it desirable to provide for an exception in the case of wholesalers who, for five years prior to July 1, 1937, had engaged in the prescribed business activity, thus creating a so-called "grandfather" clause. The purpose of the exception is the obvious one of avoiding inequities which might result to those who, prior to the enactment of the limiting legislation, had already established a wholesale business, which established business would thereafter be prejudiced in the event of a failure to be able to compete as a wholesale

liquor licensee. ▆▆ The grant of dual licenses to one falling within the exception was not predicated on the *desirability* thereof, however, but rather in spite of the lack thereof to prevent inequitable results. The exception thus creates a current and undesirable nonuniformity in the legislative scheme of regulation, and perpetuation thereof through transfers and business rearrangements, as in applicant's case, would defeat the ultimate legislative objective.

▆▆ It is not enough to say that contemplated dual licensing arrangements are but the continuation of former, authorized arrangements. The initial sanctioning of such licensing arrangements for the stated reason that the Legislature deemed it inequitable to conform certain established business arrangements does not, however, justify the knowledgeable planning of prospective arrangements with intent to exploit the exception. Where the original business has served its purpose for reasons peculiar to the licensee it would likewise appear that the dual licensing to which it was entitled had also served its purpose. In such circumstances the dual licensing provisions of section 23774 should not continue to exist to the prospective advantage of those who would acquire the licensee's assets, right to do business, or even the licensee itself. Undoubtedly the Legislature intended to establish a uniform system of regulation whereby through the process of natural attrition, those qualified for the exemption would gradually diminish in numbers until no more existed. But if the applicants are entitled to the transfers in the instant and similar cases such nonuniformity could be preserved in perpetuity. While licenses themselves may be transferable, it was never intended that the *right* of dual licensing would be transferable.

For the foregoing reasons we are persuaded that the department properly revoked the distilled spirits wholesale and import licenses on the ground that the licensee and applicants for transfer were not or were no longer qualified for the exception under section 23774 as herein construed.

Although the aforementioned accusation suggests independent disciplinary action against Park & Tilford Distillers Corporation, the history of the proceedings herein demonstrates that the purpose of the accusation was to establish some basis upon which the licenses could be revoked should they not be transferred from Park & Tilford Distillers Corporation. In view of our conclusion that the licenses must otherwise be revoked for the reasons stated, the purpose of

the accusation must be deemed to have been accomplished without a resolution of its specific merits.

The judgment is reversed with directions that the peremptory writ of mandate issue as prayed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Tobriner, J., concurred.

The petition of respondent Park & Tilford Distillers Corp. for a rehearing was denied June 16, 1964.