[L. A. No. 27516. In Bank. Dec. 24, 1964.]

In re Establishment of NORWALK CALL as a Newspaper of General Circulation. WHITEHEAD-DONOVAN CORPORATION, Petitioner and Respondent, v. HERALD PUBLISHING COMPANY, Contestant and Appellant.

James G. Butler for Contestant and Appellant.

Robert F. Tyler for Petitioner and Respondent.

MOSK, J.—In accordance with statutory procedure, the petitioner sought a decree declaring it to be a newspaper of general circulation for the City of Norwalk, and the contesting newspaper filed an answer opposing such a decree. (See Gov. Code, §§ 6020-6023; 6027.) The trial court found in favor of petitioner.

The Government Code provides that whenever any official advertising, notice, resolution, order, or other matter is required by law to be published in a newspaper, such publication shall be made only in a "newspaper of general circulation" (§ 6040), and that term is defined in section 6000 as a newspaper for the dissemination of news and intelligence of a general character which has a bona fide subscription list of paying subscribers and has been "established, printed and published" at regular intervals for at least one year preceding publication in the state, county, or city where the publication is to be made.[1] The word "established" is defined as referring to a newspaper which has been in existence under a specified name for the whole of the one-year period. (§ 6002.) Until 1923 a newspaper could qualify as "printed and published" within the meaning of the predecessor of section 6000 even though the physical act of printing was not performed in the place where the paper was to appear (*In re McDonald* (1921) 187 Cal. 158 [201 P. 110]), but in that year the Leg-

---

[1]Some of the statutory provisions discussed, including those just cited, have been in existence for many years and formerly appeared elsewhere than in the Government Code. For convenience, all provisions will be cited by reference to sections of the Government Code, except where it becomes appropriate to refer to earlier statutes.

islature adopted provisions, still in effect, defining ''printed'' and ''published'' in such manner that a newspaper could not be deemed one of general circulation for an area unless 50 per cent of the mechanical work of typesetting and impressing type on paper was completed there. (§§ 6003, 6004.)

Also in 1923, however, the Legislature enacted the provision involved in this proceeding (§ 6006), declaring, ''Nothing in this chapter alters the standing of any newspaper which, prior to the passage of Chapter 258 of the Statutes of 1923, was an established newspaper of general circulation, irrespective of whether it was printed in the place where it was published for a period of one year as required.'' In 1951 this section was amended to add the proviso, ''provided, however, that this section shall apply only in the event that said newspaper has altered neither the county, nor the town, nor the city of its publication or printing, or both, since the effective date of this act.'' The proviso was eliminated in 1961 by an amendment, thus restoring the statute to the form in which it was enacted in 1923.

It is undisputed that for many years before 1923 petitioner conducted its operations in the township of Norwalk, then unincorporated, in a manner entitling it to be a newspaper of general circulation under the law then existing and that it has continued to operate in such a manner. Petitioner does not meet the printing requirement added in 1923 and therefore necessarily relies on the exemption contained in section 6006.

In making its principal contention that section 6006 arbitrarily discriminates against newspapers established after enactment of the 1923 legislation, contestant is in effect asking this court to overrule *In re Byers* (1933) 219 Cal. 446 [27 P.2d 641]. It was held there that the exemption was intended to relieve existing newspapers of general circulation, i.e., those meeting the standards prescribed as of 1923, from the burden of satisfying the new printing requirement and that such a classification differentiating established businesses from those to be established in the future was reasonable. *Byers* said it was not ''unreasonable to exact certain requirements of a newspaper to be established in the future which are not required of those long established and which have proved their right to exist by a full compliance with all the laws in force at the time of their establishment.'' (219 Cal. at p. 450. Accord, *In re Anaheim Daily Gazette* (1963) 214 Cal.App. 2d 438 [29 Cal.Rptr. 520].) *In re Napa Journal* (1933) 132

Cal.App. 339, 342 [22 P.2d 772], contains broad language to the contrary, but it was decided six months prior to *Byers* and may be deemed to have been disapproved *sub silentio.*

Legislation excusing existing businesses from noncompliance with new regulations has frequently been upheld (*Hunter* v. *Justice's Court* (1950) 36 Cal.2d 315, 320 [223 P.2d 465]; *People* v. *Western Fruit Growers, Inc.* (1943) 22 Cal.2d 494, 508 [140 P.2d 13]; *In re Weisberg* (1932) 215 Cal. 624, 631 [12 P.2d 446]; *Matter of Stoltenberg* (1913) 165 Cal. 789 [134 P. 971]; *Ex parte Whitley* (1904) 144 Cal. 167, 171 [77 P. 879, 1 Ann.Cas. 13]; *Bohannon* v. *Board of Medical Examiners* (1914) 24 Cal.App. 215 [140 P. 1098]; see discussion in 3 Witkin, Summary of Cal. Law (7th ed. 1960) p. 1958; 12 Am.Jur. 164; 136 A.L.R. 207, 220), and there would seem to be no persuasive reason to reach a different result here, or to disapprove the conclusion in *Byers.*

On October 18, 1958, judgment was entered by the Superior Court of Los Angeles County establishing the petitioner to be a newspaper of general circulation in the City of Norwalk. The following year, in proceedings under section 6024, the court vacated the judgment, and the order was affirmed (*In re Norwalk Call,* 183 Cal.App.2d 597 [6 Cal.Rptr. 864]) on the ground that while petitioner was a newspaper of general circulation in the county, it had ceased to be a newspaper of general circulation for the City of Norwalk since it was not printed in the City of Norwalk. Neither the exemption in section 6006 nor the proviso to it then in force were cited or discussed, and there is no indication in the opinion that any consideration was given to petitioner's status in the light of the exemption.

Contestant has not contended that the vacation of the 1958 decree is res judicata, and we do not find that it is, since the court there did not discuss the issue or reach any conclusion as to the applicability of the exemption in section 6006. Res judicata is not a valid plea unless the issue decided in the prior adjudication was identical with that presented in the instant action. (*Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 813 [122 P.2d 892].)

Petitioner and the trial court rely, and we believe properly so, upon the conclusion in *In re Anaheim Daily Gazette, supra,* 214 Cal.App.2d 438, where, at page 441, the court said: "We must conclude that the elimination of the proviso (portion repealed) was done for a purpose. The repeal placed

the section back to its original interpretation as expressed in *In re Byers, supra,* 219 Cal. 446.''[2]

█ If, as here, a newspaper met all the requirements to qualify as an established newspaper of general circulation before 1923 and has continued to meet all the standards in force at that time, it should not be prohibited from relying on the exemption for the sole reason that during some intervening period of time in the past it did not meet another requirement added by the Legislature and subsequently eliminated.

Two additional contentions made by contestant appear to be lacking in merit, namely, that petitioner cannot properly qualify under section 6006 as ''an established newspaper of general circulation'' before 1923 because at that time it had obtained no court decree so declaring, and that petitioner cannot come within the exempting language relating to the City of Norwalk because that city was not incorporated until after 1923. No statute requiring a newspaper to obtain a court decree as to its status was passed until 1951 (§ 6027). Between 1905 and 1951 it was expressly provided that the acquisition of such a decree was merely optional and was not essential for the qualification of a newspaper as one of general circulation (former Pol. Code, § 4462; Gov. Code, former § 6027). █ Nor does anything in the exempting statute suggest that a newspaper which, since before 1923, has been an established one of general circulation for a given territorial area is not entitled to exemption if changes in the

---

[2]The facts in *In re Anaheim Daily Gazette,* cited above, are significantly similar to those in the instant case. The Gazette had been in existence since 1870, its circulation was in Anaheim but it moved its printing plant to neighboring Orange. The contention was made that it thus ceased to be a newspaper of general circulation in Anaheim. In that context the court held that elimination of the proviso reinvested the code section with the interpretation expressed in *In re Byers,* 219 Cal. 446 [27 P.2d 641]. The purpose of section 6006, said the court in *In re Anaheim Daily Gazette, supra,* at page 444, is to create ''two classes of newspapers of general circulation: those in existence before 1923 and those initiated thereafter, and exempts those venerable publications of the first class from the requirement that printing be done in the place of publication. Apparently the Legislature recognized this distinction in 1951 when, with the *Byers* case in the books, it amended section 6006, expressly limiting its application to newspapers that had not altered the city of publication or printing since the effective date of the statute. This severe limitation upon the exemptive application of section 6006 was removed in 1961. Thus, the plain meaning of section 6006, as presently in force, is to free newspapers of general circulation in existence before 1923 from the requirement that they be printed in the place of publication. This interpretation is compelled by the unambiguous language of section 6006.''

political structure or names of governmental entities within that area have occurred after 1923. ▮▮▮ The purpose of limiting publication to newspapers meeting certain standards is to assure that the published material will come to the attention of a substantial number of persons in the area affected (see *Application of Monrovia Evening Post* (1926) 199 Cal. 263, 269 [248 P. 1017]), and, of course, a newspaper meeting the standards does not forfeit its ability to serve that purpose merely because changes occur in the name or political structure of the area.

The judgment is affirmed.

McComb, J., Peek, J., and Schauer, J.,* concurred.

TRAYNOR, C. J.—Dissenting.—The petitioner, the Norwalk Call, and the contesting newspaper, the Norwalk Herald American, are both newspapers of general circulation for the County of Los Angeles published in the City of Norwalk. Neither is ''printed'' in that city, however, since more than 50 per cent of the mechanical work of typesetting of each is done elsewhere. (Gov. Code, §§ 6003, 6004.) Failure to meet this printing requirement prevents their being newspapers of general circulation for the City of Norwalk. Only such newspapers have the significant advantage of being qualified to publish official notices for the City of Norwalk (Gov. Code, §§ 6040, 6041), unless there are no such newspapers, in which case publications may be made in newspapers of general circulation in the nearest jurisdiction. (Gov. Code, § 6042.)

Petitioner seeks a decree declaring it to be a newspaper of general circulation for the city, contending that the Legislature exempted it from the printing requirement when it amended section 6006 of the Government Code in 1961. The effect of this amendment, petitioner contends, is to exempt newspapers that qualified as newspapers of general circulation in 1923 from the printing requirement, although newspapers not then established, like the Norwalk Herald American, still must meet the requirement. It is my opinion that if the legislation is construed to grant this privilege to petitioner, it would deny the Norwalk Herald American equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution. (See also Cal. Const., art. I,

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

§§ 11, 21.) I believe, however, that it can be reasonably construed as not granting petitioner this privilege.

When section 6006 was amended in 1961, neither the petitioner nor the contestant was a newspaper of general circulation for the City of Norwalk. It is true that the Norwalk Call was a newspaper of general circulation for Norwalk before the printing requirement was added in 1923. (Pol. Code, § 4463, now Gov. Code, §§ 6003, 6004.) It continued as such a newspaper after 1923 because of the enactment in that year of a "grandfather clause," exempting newspapers already established from the requirement. (Pol. Code, § 4465, now Gov. Code, § 6006.) In 1951, however, the Legislature added a proviso to the grandfather clause[1] and also required a judicial decree to establish that a newspaper is one of general circulation. (Gov. Code, §§ 6006, 6027.) Petitioner obtained such a decree in 1958, but the judgment was vacated in 1959 on the ground that petitioner did not meet the requirements of a newspaper of general circulation. (*In re Norwalk Call,* 183 Cal.App.2d 597 [6 Cal.Rptr. 864].) Therefore, for several years before the 1961 legislation, the Norwalk Call had ceased to be a newspaper of general circulation for the City of Norwalk.

Petitioner contends that the "repeal [of the 1951 proviso] placed the section back to its original interpretation" (*In re Anaheim Daily Gazette,* 214 Cal.App.2d 438, 441 [29 Cal. Rptr. 520]) and therefore restored its status as a newspaper of general circulation for the City of Norwalk, which it had lost when the proviso was in effect. When the Norwalk Call lost its status as a newspaper of general circulation for the City of Norwalk, however, its position became identical with that of the Norwalk Herald American. At that time both were newspapers whose printing establishments were outside the city, and both would have had to alter this arrangement to qualify for the advantages of a newspaper of general circulation for the city. If the 1961 amendment operated to confer the privilege of exemption on pre-1923 newspapers only, it discriminated not between new and old businesses, as it did in 1923, but between two already established businesses.

Application of the 1961 amendment to distinguish petitioner and contestant cannot be justified on the rationale of the grandfather clause. Although such clauses create an un-

---

[1] "[P]rovided, however, that this section shall apply only in the event that said newspaper has altered neither the county, nor the town, nor the city of its publication or printing, or both, since the effective date of this act." (Gov. Code, § 6006.)

desirable lack of uniformity by favoring existing businesses over new ventures, they are upheld to protect existing businesses from the burdens sometimes involved in conforming to new regulations. (*Harris* v. *Alcoholic Beverage etc. Appeals Board*, 61 Cal.2d 305, 309-310 [38 Cal.Rptr. 409, 392 P.2d 1]; *Hunter* v. *Justice's Court*, 36 Cal.2d 315, 321 [223 P.2d 465]; *People* v. *Western Fruit Growers, Inc.*, 22 Cal.2d 494, 508 [140 P.2d 13]; *Motor Transit Co.* v. *Railroad Commission*, 189 Cal. 573, 585 [209 P. 586].) These clauses imply that "through the process of natural attrition, those qualified for the exemption would gradually diminish in numbers until no more existed." (*Harris* v. *Alcoholic Beverage etc. Appeals Board*, *supra*, 61 Cal.2d 305, 310.) Thus, we upheld the original grandfather clause passed in 1923 since it was not "unreasonable to exact certain requirements of a newspaper to be established in the future which are not required of those long established. . . ." (*In re Byers*, 219 Cal. 446, 450 [27 P.2d 641].) The Legislature decided that the alteration of an established newspaper's printing arrangements would be a greater burden than the initiation of printing in the manner prescribed. In this case, however, both petitioner and contestant are established businesses. Each would have similar difficulties in altering its printing arrangements to qualify for the advantages of a newspaper of general circulation. Application of the 1961 amendment to petitioner would not preserve a distinction between established and new newspapers but would create an inequity by favoring one established newspaper over another.

A classification that bears no reasonable relation to a proper legislative objective is invalid. (*Blumenthal* v. *Board of Medical Examiners*, 57 Cal.2d 228, 233 [18 Cal.Rptr. 501, 368 P.2d 101]; *Werner* v. *Southern Cal. etc. Newspapers*, 35 Cal. 2d 121, 131 [216 P.2d 825, 13 A.L.R.2d 252], appeal dismissed, 340 U.S. 910 [71 S.Ct. 290, 95 L.Ed. 657].) Once the reason for conferring a special privilege ends, the privilege must end. Thus, in *Harris* v. *Alcoholic Beverage etc. Appeals Board*, *supra*, 61 Cal.2d 305, this court refused to extend the privilege of a grandfather exception to a transferee of the original business. The court reasoned that the justification of protecting existing establishments was no longer applicable. In this case, the 1961 selection of 1923 as the crucial year for conferring the exemption bears no relation to the burden involved in conforming to the printing requirement. This court has often condemned the selection of an arbitrary date as the cut-off point in the conferring of special privileges. (*Account-*

*ing Corp. of America* v. *State Board of Accountancy,* 34 Cal.2d 186, 190 [208 P.2d 984] ; *Van Harlingen* v. *Doyle,* 134 Cal. 53, 56-57 [66 P. 44, 54 L.R.A. 771].) Just as the original 1923 grandfather clause would have been invalid had it exempted businesses established in 1895, an exemption in 1961 of businesses established in 1923 must likewise be condemned.

We should construe section 6006 to avoid unconstitutionality if it can reasonably be so construed. (*Lynch* v. *Overholser,* 369 U.S. 705, 710-711 [82 S.Ct. 1063, 8 L.Ed.2d 211] ; *Geiger* v. *Board of Supervisors,* 48 Cal.2d 832, 839 [313 P.2d 545].) The section reads: "Nothing in this chapter *alters the standing* of any newspaper which, prior to the passage of Chapter 258 of the Statutes of 1923, was an established newspaper of general circulation, irrespective of whether it was printed in the place where it was published for a period of one year as required." (Italics added.) The Norwalk Call, however, was not a newspaper of general circulation for the City of Norwalk when the 1961 amendment was adopted. Application of the printing requirement to the petitioner will not alter its standing as of the effective date of the 1961 amendment. To invoke that amendment to make it a newspaper of general circulation for the City of Norwalk now would alter its standing: its standing would be altered from that of a newspaper that was not a newspaper of general circulation for the City of Norwalk to one that was. The purpose of a grandfather clause is to preserve the current status of a newspaper, not to restore a former status. Such an interpretation is reasonable and avoids unconstitutional implications. Language in *In re Anaheim Daily Gazette, supra,* 214 Cal.App.2d 438, 444, that would extend to cases like the present one in which the pre-1923 standing has been lost should be disapproved.

In my opinion section 6006 not only does not but cannot constitutionally exempt the Norwalk Call from the printing requirement. I would therefore reverse the judgment.

Peters, J., and Tobriner, J., concurred.

Appellant's petition for a rehearing was denied January 20, 1965. Traynor, C. J., Peters, J., and Tobriner, J., were of the opinion that the petition should be granted.