Floyd M. STEPHENS et al.,
Plaintiffs,

v.

Dan A. DENNIS, Jr., as President of the Alabama State Board of Pharmacy, et al., Defendants and Counterclaimants.

v.

Carl C. ADAMS et al., Counterclaim Defendants.

Civ. A. No. 67–409.

United States District Court
N. D. Alabama, E. D.

Aug. 15, 1968.

Guy Sparks, Anniston, Ala., for plaintiffs.

MacDonald Gallion, Atty. Gen. of Alabama, John C. Tyson, III, Asst. Atty. Gen., Montgomery, Ala., for defendants.

Lange, Simpson, Robinson & Somerville, Birmingham, Ala., for Cecil G. Brown, Jr. and Samuel L. Harris, cross-claimants and additional defendants.

Jere L. Beasley, Clayton, Ala., for John W. Milldrum, cross-claimant.

William P. Albritton, cross-claimant pro se.

deGraffenried, deGraffenried & deGraffenried, Tuscaloosa, Ala., for Frances S. Taylor cross-claimants.

Potts & Young, Florence, Ala., for 13 cross-claim defendants.

J. Mason Davis, Birmingham, Ala., for Lane Evans.

Ben L. Britnell, Decatur, Ala., for Herbert J. Eaton, J. C. Howell and William C. Montgomery.

McEniry, McEniry & McEniry, Bessemer, Ala., for Hazel B. Ripley, Julia S. Taylor, Sadie M. Drummona, Fannie Lee Wadley and Mildred Walton.

Nabors & Torbert, Gadsden, Ala., for eight cross-claim defendants.

Sam M. Phelps, J. J. Spiro, Tuscaloosa, Ala., for six cross-claim defendants.

Merrill, Merrill, Vardaman & Williams, Anniston, Ala., for Julian E. Sewell, and James E. Young.

McKay & Livingston, Sylacauga, Ala., for eight defendants to cross-claim.

Robert W. Weaver, Talladega, Ala., for Virgil Chappell, defendant to counterclaim.

George R. Reynolds, Birmingham, Ala., for eight defendants to counterclaim.

Sirote, Permutt, Friend & Friedman, by William G. West, Jr., Birmingham, Ala., for eight defendants.

Grubb & LeMaistre, Eufaula, Ala., for Nell Pitts and Elsie Scarbrough.

Rowe & Lane, Enterprise, Ala., for Douglas Lee Rollins.

E. H. Graves, Jr., Eufaula, Ala., for Dorothy Benton Carmack and 15 defendants.

Howard & Dunn, Wetumpka, Ala., for Mary R. Venable d/b/a City Drug Store, Eclectic, Ala.

John F. Atkinson, Thomas D. Burlage, James A. Moehling, Witwer, Moran & Burlage, Chicago, Ill., and R. Kent Henslee, Gadsden, Ala., for amicus curiae National Assn. of Boards of Pharmacy

and American Assn. of Colleges of Pharmacy.

Arthur B. Hanson, Washington, D. C., James S. Hubbard, Anniston, Ala., R. K. Kennon Jones, Washington, D. C., for amicus curiae American Pharmaceutical Assn., Inc., a non-profit corp. of District of Columbia.

Hinson & Hamilton, Montgomery, Ala., for Curtis Wells.

Before GODBOLD, Circuit Judge, and LYNNE and ALLGOOD, District Judges.

PER CURIAM:

This is an action by licensed pharmacists in Alabama to enjoin, upon the ground of unconstitutionality under the equal protection clause of the fourteenth amendment to the United States Constitution, the enforcement and operation of the portion of § 9[1] of Alabama Act No. 205, 1966 Special Session,[2] providing for the issuance of assistant pharmacist certificates to persons possessing at the time of the act's passage experience of at least 15 successive years in pharmacy under the supervision of a licensed pharmacist. The defendants are members of the Alabama State Board of Pharmacy who, being prepared at the time of suit's commencement to certify those applicants found to be qualified under § 9, were restrained from issuing certificates pending determination of the action. The defendant board members in turn have caused the applicants for assistant's certificates, some 220 persons, to be joined as additional defendants to their counterclaim. A three-judge district court was convened pursuant to 28 U.S.C. § 2281 and the cause submitted on stipulated facts and briefs[3] for determination of plaintiffs' prayer for a permanent injunction. Jurisdiction exists under 28 U.S.C. § 1331(a), the action being one which arises under the federal constitution and involves the requisite sum in controversy.

■ The court is presented at the outset with a challenge by several of the counterclaim defendants of the standing of the plaintiffs to contest the validity of § 9. Relying on such cases as Tennessee Electric Power Co. v. Tennessee Valley Authority, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543, it is contended that the claim by the plaintiffs amounts to nothing more than the assertion of a right to be free of economic competition made possible by governmental action which accords them no standing. The bases of the plaintiffs' claims, however, are not limited to the effects of economic competition; they also complain that the act requires of licensed pharmacists disparate and more burdensome standards of qualification than it requires of certified assistant pharmacists. And in the present circumstances plaintiffs would not lack standing even if economic competition were their only complaint. Through their licensure to engage in a profession which the State of Alabama has declared to be subject to regulation in the public interest and open only to those able to qualify for licenses, plaintiffs have acquired a privilege to practice pharmacy which is exclusive against any person attempting to engage in the practice "without obtaining a permit or, what amounts to the same thing, against one who attempts to do so under a void permit"; and in either case they, as holders of valid licenses, "may resort to a court of equity to restrain the illegal" issuance of and practice under permits claimed by them to be void under the equal protection clause of the fourteenth amendment. Frost v. Corporation Commission of Oklahoma, 278 U.S. 515, 520–521, 49 S.Ct. 235, 73 L.Ed. 483. As ob-

1. § 257(a9), tit. 46, Alabama Code (1940) (Recomp.1958).

2. §§ 257(a1)–257(a32), tit. 46, Alabama Code (1940) (Recomp.1958).

3. In addition to those of the parties, briefs were submitted in behalf of the American Pharmaceutical Association, the National Association of Boards of Pharmacy, and the American Association of Colleges of Pharmacy as *amici curiae* supporting the plaintiffs.

served in *Alabama Power Co. v. Ickes,* 302 U.S. 464, 484–485, 58 S.Ct. 300, 306, 82 L.Ed. 374, in distinguishing *Frost:* "The difference between the *Frost* case and this is fundamental; for the competition contemplated there was unlawful while that of the municipalities contemplated here is entirely lawful." It is precisely the contention of the present plaintiffs, and it is the object of this suit to determine, that the issuance of and the practice of pharmacy under the assistant's certificates contemplated by § 9 would be illegal because the statute denies equal protection. It therefore is our opinion that the objections to plaintiffs' right to maintain the action are due to be overruled.

Act No. 205 is a comprehensive, self-contained law regulating in detail the practice of pharmacy and the operation of pharmacies in Alabama. Among its differences from the state's previous statutes serving the same function, and in keeping with its evident aim of strengthening the regulation of pharmacy, it increases the standards thenceforth required of those seeking licensure and terminates the practice permitted under prior laws whereby persons who were required to be neither licensed nor certified nor possessed of any prescribed qualifications could legally engage in pharmacy as assistants working under the supervision of licensed pharmacists. To this departure from prior law § 9 [4]

4. Section 9 of Act No. 205, including the part challenged by plaintiffs (which is underscored), provides as follows:

"Section 9. License required to practice pharmacy.—It shall be unlawful for any person, firm or corporation to practice pharmacy in this state or to permit prescriptions to be compounded and/or dispensed by persons other than those duly licensed by the board to practice pharmacy in this state provided that any person who holds a professional degree in pharmacy from a school of pharmacy recognized by the board who is serving his internship under the immediate direct supervision of a pharmacist on the premises registered by the board and any person who is enrolled in a school of pharmacy recognized by the board working under the immediate and direct supervision of a pharmacist on the premises registered by the board pursuing his education as a pharmacist, shall be permitted to compound and/or dispense prescriptions. In order to be considered enrolled in a school of pharmacy and pursuing his education as a pharmacist a person shall not be absent from said school of pharmacy for more than two (2) consecutive semesters or three (3) consecutive quarters, dependent upon the system in use and said school of pharmacy. Any bona fide resident of this state who shall furnish proof to the board in person by affidavits from two pharmacists licensed by the state board of pharmacy, neither of whom shall be related to the applicant by blood or marriage, within a period of ninety (90) days subsequent to the effective date of this Act establishing the fact that he has filled prescriptions under the supervision of a licensed pharmacist over a period of at least fifteen (15) successive years next preceding the offer of such proof shall be issued an assistant's certificate which will authorize him to practice pharmacy in this state provided that it shall be under the supervision of a licensed pharmacist at all times, and such person shall be subject to all of the provisions of this Act governing the practice of pharmacy in this state including but not limited to the revocation or suspension of such certificate for violations of the provisions of this Act, and provided further that such person shall pay an original registration fee of twenty-five Dollars ($25.00) upon the issuance of such certificate and the annual renewal fee of ten dollars ($10.00) as provided in this Act. As used in the preceding, the term 'supervision' shall be construed to mean that the supervising licensed pharmacist shall be either personally present or on call and available for consultation at all times, or a licensed pharmacist designated by the supervising licensed pharmacist shall be either personally present or on call and available for consultation at all times." [Emphasis added].

makes an exception with respect to those of such unlicensed assistants who had been so engaged for a minimum period of 15 successive years at the time the act became effective (August 26, 1966) or within 90 days thereafter. Proof of the requisite qualifications in the form of affidavits of at least two licensed pharmacists was required to be submitted to the board of pharmacy by each applicant within 90 days after the act's effective date, and the board has examined orally each of the applicants respecting his qualifications. To a person found by the board to be qualified under the prescribed standards, § 9 provides for the issuance of an assistant's certificate authorizing the holder to practice only "under the supervision of a licensed pharmacist at all times"—which he was previously authorized to do without a certificate or license. It also subjects him, apparently for the first time, "to all of the provisions of this Act governing the practice of pharmacy in this state including * * * the revocation or suspension of such certificate for violations * * *." By § 15 of the act it is required that "[e]very pharmacy * * * shall be under the personal supervision of a duly *licensed* pharmacist who shall have personal supervision of not more than one pharmacy at the same time," thereby precluding a certified assistant from operating a pharmacy independently of the supervising licensed pharmacist except during temporary absences of the latter who must nevertheless be "on call . . . at all times." The object of this action is to have this provision for certification of assistant pharmacists declared unconstitutional.

In urging its unconstitutionality plaintiffs first maintain that it is discriminatory in that: the act grants to assistant pharmacists the status and rights equivalent to those of licensed pharmacists but requires of them qualifications which are lower and less burdensome than those required of licensed pharmacists;[5] exclusion of unlicensed persons with less than 15 years' experience at the effective date of the act and the absence of provision for their subsequent certification upon acquiring experience of a similar duration discriminates against persons so excluded; and the act requires less supervision of assistant pharmacists than of pharmacy interns and students, resulting in discrimination against licensed pharmacists employing interns or students and in favor of those employing assistant pharmacists. The act's classification creating the claimed discrimination, plaintiffs' insist, is unreasonable and therefore unconstitutional because persons entitled under the standards of § 9 to assistant's certificates are not qualified to practice pharmacy, so that the provision for their certification is not reasonably related to the statute's object to permit only qualified persons to engage in its practice.

Repealing and replacing the law then existing (Ala.Acts 1931, Reg.Sess., No. 332, substantially codified as §§ 214–257, tit. 46, Ala.Code [1940] [Recomp. 1958]), the 1966 Act is the most recent of a succession of similar statutes enacted from time to time by the Alabama legislature since the beginning of its regulation of the practice of pharmacy in 1887.[6] While the trend of each of these successive enactments generally has been toward increased educational and other standards for practitioners, each also has been characterized by an apparent legislative recognition and accommodation of the practical needs of the state in providing for qualified pharmacists not possessing the more formal qualifications of education and train-

---

5. Under § 11 of Act No. 205 applicants for licenses must have a professional degree in pharmacy (requiring a minimum of 5 academic years) from an approved school of pharmacy, must have completed one year of internship under the supervision of a licensed pharmacist, and must stand successfully an examination administered by the board of pharmacy.

6. Ala.Acts 1886–87, No. 64; Ala.Acts 1896–97, No. 639; Ala.Acts 1907, No. 609; Ala.Acts 1909, No. 205; Ala.Acts 1931, Reg.Sess., No. 332; Ala.Acts 1966, Spec.Sess., No. 205.

ing. First, as we already have noted above, each of the statutes before 1966 specifically authorized unlicensed persons to practice pharmacy as assistants under the supervision of licensed pharmacists. Thus the provision in § 5 of the 1931 Act [7] forbidding the operation of a pharmacy "without placing in active personal charge and on duty at all times * * * except for temporary absences as defined and prescribed by the Board of Pharmacy at each place of business a pharmacist duly registered and licensed" was intended by the legislature, as held in Gibbs v. Cochran, 281 Ala. 22, 26, 198 So.2d 607, 610 (1967), "to permit so-called non-registered pharmacists * * * to work under the supervision of a registered pharmacist." Earlier statutes had accorded the same privilege to unlicensed practitioners through provisions permitting them to practice pharmacy "as an aid to, and under the supervision of a registered pharmacist." [8] Second, each except the 1966 statute has made specific provision for pharmacists practicing in the state's more rural communities. The 1887, 1896, and 1907 acts excluded altogether from its provisions and licensing standards those persons practicing in towns with populations of less than 1,000, 500, and 900 respectively. Section 7 of the 1931 statute [9] similarly authorized issuance of "limited licenses" to those who had practiced in towns of less than 2,000 inhabitants for a period of 10 years prior to July 1, 1932, without requiring qualification under the educational standards otherwise required of licensed pharmacists. Although the 1966 act does not contain a provision expressly accommodating the needs of the less populous areas, it may be noted that a substantial number of the applicants for assistant's certificates under § 9 reside in small towns. Third, each statute, while prescribing minimum standards of education and training for those seeking licenses, also has authorized licenses on the basis of practical experience as an alternate standard of competence. Indeed, every prior law has permitted the full licensure, as distinguished from the assistant status accorded by the present statute, of those having a prescribed amount of experience. The 1909 statute, for example, granted "assistant pharmacist" licenses to persons with 2 years' experience under a licensed pharmacist and granted full licenses to those who either had 4 years of such experience or had degrees in pharmacy together with 2 years of practical experience. And § 7 of the 1931 statute provided for the full licensure of persons who had, as of the specified date of March 1, 1932, only 10 years' experience under the supervision of licensed pharmacists. It thus is evident that Alabama historically has deemed it necessary and expedient to include in its regulatory scheme for pharmacy provisions both for the qualification of practitioners on the basis of experience and for assistant pharmacists. This case hardly can be considered to present therefore a classification of a novel sort [10] or any "[d]iscrimination of an unusual character" such as those found in such cases as Morey v. Doud, 354 U.S. 457, 464, 77 S.Ct. 1344, 1 L.Ed. 2d 1485.

■ Assuming the existence of statutory discrimination in the respects urged by plaintiffs, it is objectionable under the equal protection clause only if the classification is so arbitrary that it amounts to an "invidious discrimi-

7.  § 234, tit. 46, Ala.Code (1940) (Recomp. 1958).

8.  E. g., § 2 of the 1887 Act; § 3 of the 1907 Act; § 1 of the 1909 Act.

9.  § 238, tit. 46, Ala.Code (1940) (Recomp. 1958).

10. Nor are such provisions peculiar to the Alabama statutes. See, e. g., Burger v. Richards, 380 P.2d 687 (Okla.); Minnesota Pharmaceutical Association v. State Board of Pharmacy, 103 Minn. 21, 114 N.W. 245; Rosenblatt v. California State Board of Pharmacy, 69 Cal.App. 2d 69, 158 P.2d 199; Beeman v. Michigan Board of Pharmacy, 323 Mich. 390, 35 N.W.2d 354, appeal dismissed for want of substantial federal question, 338 U.S. 803, 70 S.Ct. 63, 94 L.Ed. 486.

nation" for which no "state of facts reasonably may be conceived to justify it." McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393. Plaintiffs insist that the provision for assistants is arbitrary in that it is inconsistent with the act's general object, as recited in its § 1, that "only qualified persons compound or dispense prescription drugs and medicines." This inconsistency arises, they say, from the fact that persons entitled to certification under § 9 are unqualified in view of their exemption from the educational standards required of licensed pharmacists. Section 9 also is unreasonable, they contend, in its restriction of eligibility for certification to only those persons having the prescribed experience on the effective date of the act (or within 90 days thereafter), thereby excluding those with less experience on the critical dates specified. In both of its aspects therefore the contended unreasonableness is rooted substantially in their disagreement with the standards for qualification fixed by the legislature for assistants— that is, both in its authorization and in its limitation of certification to persons possessing the requisite experience at the act's passage.

A court's power to review the criteria selected by the Alabama legislature as demonstrative of its notions of professional competence is extremely limited. The Constitution does not compel the states to prescribe any qualifications for professional practitioners or to otherwise regulate activity which may be subject to regulation under their police powers. Hughes v. Superior Court of California, 339 U.S. 460, 468, 70 S.Ct. 718, 94 L.Ed. 985. And when a state does exercise its unquestioned right to regulate and fix standards of fitness for the practice of a profession, "[t]he nature and extent of the qualifications required must depend primarily on the judgment of the state" (Dent v. West Virginia, 129 U.S. 114, 122, 9 S.Ct. 231, 233, 32 L.Ed. 623) since "[i]t is elemental that a state has broad power to establish and enforce standards of

conduct within its borders relative to the health of everyone there" including the "substantially plenary power to fix the terms of admission" to the practice of any profession concerned with health (Barsky v. Board of Regents of University of State of New York, 347 U.S. 442, 449, 451, 74 S.Ct. 650, 654, 655, 98 L.Ed. 829). Hence, insofar as plaintiffs' argument of unreasonableness is predicated upon their fundamental disagreement with the Alabama legislature's determination that a person with 15 years' experience on the act's effective date *is* qualified to practice and that its provision for assistant pharmacists *is* promotive of the public health and welfare and of the act's objectives, it raises questions which are more properly within the province of the legislature than that of the courts. Even if we had doubts about the efficacy of § 9's standards in promoting furtherance of the objectives professed by the act, it would be nevertheless improper for this court to weigh "the wisdom, need, or appropriateness of the legislation," or to consider "whether we believe the law to be for the public good," or to require that all parts of the statute "be in every respect logically consistent with its aims." Ferguson v. Skrupa, 372 U.S. 726, 730, 732, 83 S.Ct. 1028, 1031, 10 L.Ed.2d 93, 95 A.L.R.2d 1347; Williamson v. Lee Optical of Oklahoma, 348 U.S. 483, 487–488, 75 S.Ct. 461, 464, 99 L.Ed. 563. The state legislatures "are entitled to their own standard of the public welfare" (Day-Brite Lighting, Inc. v. Missouri, 342 U.S. 421, 423, 72 S.Ct. 405, 407, 96 L.Ed. 469), and the statutory articulation of that standard is peculiarly a legislative function.

The Supreme Court for these reasons has rejected similar arguments directed against statutes authorizing, in like manner as Act No. 205, the professional licensure of classes of persons possessing on a specified date experience of a prescribed duration but excluding all others with less experience at the critical time. Watson v. Maryland, 218 U.S. 173, 30 S.Ct. 644, 54 L.Ed. 987,

involved a statute permitting the practice of medicine without examination or other evidence of competence by persons "who were practicing medicine in this state prior to the 1st day of January, 1898, who are now practicing medicine or surgery, and can prove by affidavit that within one year of said date said physician had treated in his professional capacity at least twelve persons." Of all others it required minimum educational standards and an examination. It was contended, as here, that the statute's limitation requiring the existence of the necessary experience as of the specified date was "an unreasonable and arbitrary classification, resulting in the exclusion from the exception of physicians of equal merit and like qualifications with those who are within its terms." In sustaining its constitutionality the Court concluded in part, 218 U.S. at 177, 178, 30 S.Ct. at 646:

> "Conceding the power of the legislature to make regulations of this character, and to exempt the experienced and accepted physicians from the requirements of an examination and certificate, the details of such legislation rest primarily within the discretion of the state legislature. It is the lawmaking body, and the Federal Courts can only interfere when fundamental rights guaranteed by the Federal Constitution are violated in the enactment of such statutes.

> \*   \*   \*   \*   \*   \*

> "\*   \*   \* Applying these tests, we see nothing arbitrary or oppressive in the classification of physicians subject to the provisions of this statute, which excludes from its requirements those

who have practiced prior to January 1, 1898, and were able to show that they had treated at least twelve persons in a professional way within a year of that date."

Like conclusions have been reached in other cases involving analogous statutes.[11]

The similarity of the Alabama act under consideration to that in *Watson* is obvious. Consistent with its apparent purpose to increase the qualifications of practitioners of pharmacy, the Alabama legislature for the first time has prohibited all previously unlicensed persons from practicing under the supervision of licensed pharmacists except those deemed qualified and entitled to certification by reason of the length of their experience. Since "the details of such legislation rest primarily within the discretion of the state legislature," [12] it is beyond a court's ability to conclude that the Alabama legislature's use of 15 years' experience—instead of 30 years, 5 or 20—is not reasonably calculated to select persons who are qualified to practice under the required supervision of a licensed pharmacist. And even if the details of the standards as fixed by the legislature for assistant pharmacists were subject to judicial evaluation, the record in this case is devoid of any basis for a conclusion that those entitled under the statute's terms to certification are not amply qualified for the limited status (i. e., to work only under the supervision of licensed pharmacists) which the statute permits them, or indeed that they are not equally as qualified as are the fully licensed pharmacists whose status is superior. See McGowan v. Maryland,

11. E. g., Dent v. West Virginia, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623; Beeman v. Michigan Board of Pharmacy, 323 Mich. 390, 35 N.W.2d 354, appeal dismissed for want of substantial federal question, 338 U.S. 803, 70 S.Ct. 63, 94 L.Ed. 486; Rosenblatt v. California State Board of Pharmacy, 69 Cal.App.2d 69, 158 P.2d 199; Wasmuth v. Allen, 14 N.Y.2d 391, 252 N.Y.S.2d 65, 200 N.E. 2d 756, appeal dismissed for want of substantial federal question, 379 U.S. 11, 85

S.Ct. 86, 13 L.Ed.2d 23; Bohannon v. State Board of Medical Examiners, 24 Cal.App. 215, 140 P. 1089; Brooks v. State Board of Funeral Directors and Embalmers, 233 Md. 98, 195 A.2d 728, 737–738; In re Norwalk Call, 62 Cal.2d 185, 41 Cal.Rptr. 666, 397 P.2d 426, appeal dismissed for want of substantial federal question, 382 U.S. 13, 86 S.Ct. 41, 15 L.Ed.2d 8.

12. Watson v. Maryland, supra, 218 U.S. at 177, 30 S.Ct. at 646.

366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed. 2d 393. On the contrary, the exhibit to the parties' stipulation consisting of the applications, affidavits, and transcripts of the board of pharmacy's examination of the applicants for certificates —which contain the only indications in the record of their individual qualifications—substantiate the reasonableness of the prescribed standards.[13] Furthermore, the privileges which the act accords assistant pharmacists are not equivalent to those given fully licensed pharmacists since the former are permitted to practice only under the supervision of the latter. It accordingly is clearly reasonable that their qualifications be correspondingly different.

Nor is there basis for a conclusion that the legislature was unconstitutionally arbitrary in its determination to provide, as it has done in § 9, for the continuation of only those assistant pharmacists having the requisite experience while eliminating the others. Although the legislature could have abolished entirely the utilization of assistants and experience as a criterion of ability, it certainly was not compelled by the Constitution to do so. "[T]he reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." Joseph E. Seagram & Sons, Inc. v. Hostetter, 384 U.S. 35, 51, 86 S.Ct. 1254, 1264, 16 L.Ed.2d 336; Williamson v. Lee Optical of Oklahoma, 348 U.S. 483, 459, 75 S.Ct. 461, 99 L.Ed. 563. We cannot say, moreover, that no "state of facts reasonably may be conceived to justify" the classification of assistant pharmacists (McGowan v. Maryland, supra, 366 U.S. at 426, 81 S.Ct. 1101) or that the Alabama legislature "with its informed acquaintance with local conditions to which the legislation is to be applied * * * was not aware of facts which afford reasonable basis for its action" (Carmichael v. Southern Coal & Coke

Co., 301 U.S. 495, 510, 57 S.Ct. 868, 872, 81 L.Ed. 1245, 109 A.L.R. 1327). It could reasonably have concluded, for example, that its provision for the limited number of assistant pharmacists was necessary to assure the retention of an adequate number of qualified practitioners to meet the state's health needs until such time as enough licensed pharmacists would be available. Under the law repealed by the 1966 Act a number of the state's practicing pharmacists either were unlicensed or were licensed on the basis of experience. Having a real and legitimate interest in maintaining the number of pharmacists considered by it to be adequate, the state could ill afford to strengthen its standards for the profession if it were precluded from also providing for the continuation of some practitioners unable to meet the new standards. Or the legislature might have found, particularly in view of the new act's elimination of "limited licenses" and other special provisions in prior statutes for those practicing in less populous communities that its limited allowance of assistant's certificates was a necessary or expedient means of retaining sufficient pharmacists in the smaller towns. It is for the legislature to determine the number of assistant pharmacists considered necessary for the state and to strike an advantageous balance between the qualifications and the quantity of pharmacists, and its determination in § 9, like that in the *Watson* statute, to restrict certification to only those persons having the specified experience on the stated dates surely is not so palpably arbitrary as to contravene fundamental constitutional guarantees. The reasonableness of the restriction to those possessing the qualifications on the effective date is particularly manifest when the available alternatives are considered. Inasmuch as the unlicensed practice of pharmacy was forbidden by the act, the only means by

13. While *stipulating to the authenticity* of those documents, plaintiffs have objected to their materiality and relevancy. Since they bear some relevance to plain- tiffs' contention that those entitled to assistant certificates are "unqualified," the objection is overruled.

which certification could have been extended to others unlicensed at its passage would be either by lowering or eliminating the required period of experience or by failing to eliminate unlicensed practitioners. Clearly the alternative chosen by the legislature is more promotive of the declared objectives of the act than would be these others.

Plaintiffs and *amici curiae* further insist that Watson v. Maryland, supra, and similar decisions are inapposite because the statutes there involved were limited to maintenance of the *status quo* by permitting professionals to continue their practice "on substantially the same basis" as before, whereas § 9 accords assistant pharmacists a status exceeding that previously occupied by them. Their premise is that § 9 grants them a full and unrestricted right to practice, while formerly they were authorized under § 234, tit. 46, Ala. Code (1940), and Gibbs v. Cochran, 281 Ala. 22, 198 So.2d 607, to practice only while under the "active personal charge" of licensed pharmacists. Our reading of *Watson* discloses nothing limiting its rationale in the manner contended. But assuming the existence of some constitutional limitation on the legislature's power to alter the *status quo* it nevertheless is plain that the rights of certified assistants under § 9 are substantially identical to those of unlicensed assistants under the repealed law. Section 9 does not, as plaintiffs contend, permit assistants to practice fully and without restriction: it specifically requires that they "shall be under the supervision of a licensed pharmacist at all times," defining "supervision" as requiring that the licensed pharmacist "be either personally present or on call and available for consultation at all times." And the prior statute, § 234 of title 46, similarly provided that licensed pharmacists supervising unlicensed practitioners be on duty at all times during business hours "except for temporary absences as defined and prescribed by the board of pharmacy." There is no perceptible difference, and certainly none of constitutional import, in the degree of supervision required by the two statutes.

It is the court's considered conclusion that § 9 of Act No. 205 does not deny equal protection guaranteed by the fourteenth amendment to the United States Constitution. Accordingly, an appropriate order will be entered dissolving the restraining order previously entered and dismissing the cause with prejudice.

## ORDER

In conformity with the per curiam opinion of the court contemporaneously filed herewith.

It is ordered, adjudged and decreed by the court that the temporary restraining order entered herein on the 18th day of July, 1967, be and the same is hereby vacated and that the principal and surety on the injunction bond taken and approved on the 18th day of July, 1967, be and the same are hereby relieved and discharged from liability thereon.

It is further ordered, adjudged and decreed by the court that this action be and the same is hereby dismissed with prejudice, and the costs of the court incurred herein be and the same are hereby taxed against plaintiffs for which, unless presently paid, execution may issue.