WINE & SPIRITS MERCHANDISERS, INC., Plaintiff-Appellee, *v.* ILLINOIS LIQUOR CONTROL COMMISSION *et al.*, Defendants-Appellants.

First District (4th Division)    No. 81-582

Opinion filed February 4, 1982.—Rehearing denied March 8, 1982.

Tyrone C. Fahner, Attorney General, of Chicago (Karen Konieczny, Assistant Attorney General, of counsel), for appellants.

Arvey, Hodes, Costello & Burman, of Chicago (Howard Arvey and Irwin I. Zats, of counsel), for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

The present litigation began when the defendant, the Illinois Liquor Control Commission (Commission), declined to renew certain distributor licenses held by the plaintiff, Wine & Spirits Merchandisers, Inc. (Wine & Spirits). Wine & Spirits filed a complaint for administrative review in the circuit court of Cook County. The trial court reversed the determination of the Commission, and the Commission brought this appeal contending that distributor licensing of Wine & Spirits is prohibited by article VI, section 3 of the Illinois Liquor Control Act (Act) (Ill. Rev. Stat. 1979, ch. 43, par. 121). For purposes of clarity, the unofficial citation form will be used when referring to the provisions of the Act.

Paragraph 121 is commonly known as a "tied house" law. The purpose of such statutes is to keep liquor distilling separate from liquor

distribution, thus preventing horizontal and vertical integration of the industry. (See *Weisberg v. Taylor* (1951), 409 Ill. 384, 100 N.E.2d 748.) As pertinent to this appeal, paragraph 121(a) provides that no subsidiary of a distiller shall be issued a distributor's license. The facts clearly indicate that Wine & Spirits is a subsidiary of a subsidiary of a distiller, and no argument is made to the contrary. Rather, the issue to be resolved is whether Wine & Spirits falls within the exception created by paragraph 121(b), which provides as follows:

> "The foregoing provisions shall not apply to any person licensed by any licensing authority as a distiller * * * or to any subsidiary or affiliate of any distiller * * * who shall have been heretofore licensed by the State Commission as either an importing distributor or distributor during the annual licensing period expiring June 30, 1947, and shall actually have made sales regularly to retailers."

(Ill. Rev. Stat. 1979, ch. 43, par. 121(b).)

Paragraph 121(c) of the Act imposes restrictions on the brand of alcoholic beverages a paragraph 121(b) licensee may sell to retailers or add to its lines. Paragraph 121(d) restricts a distiller's ability to have any stock ownership or interest in a distributor's license.

Wine & Spirits was incorporated in 1955 under the name Merit Liquor Company. It acquired licenses as a distributor, importing distributor and foreign importer. In 1966, all of the company's shares were sold to Schenley Affiliated Brands Corporation (Affiliated), which also operates as a distributor. Affiliated is a wholly owned subsidiary of Schenley Industries, Inc. (Schenley). The relationship between Affiliated and Schenley was established sometime prior to June 30, 1947. Schenley is licensed as a distiller by several States as well as by the Federal government. Despite Wine & Spirits' relationship with Affiliated and with Schenley, a distiller, the Commission continued to renew Wine & Spirits' distributor licenses from 1967 until 1979.

In November of 1979, the Commission issued a citation notifying Wine & Spirits of a hearing to show cause why its application for renewal of its distributor, importing distributor and foreign importer's licenses should not be denied. The citation recited that Wine & Spirits was in violation of paragraph 121(a) of the Illinois Liquor Control Act (Ill. Rev. Stat. 1979, ch. 43, par. 121(a)) in that Wine & Spirits was 100% owned by Affiliated, which in turn was a 100% owned subsidiary of a distiller— Schenley. A hearing was held, and on April 2, 1980, the Commission denied Wine & Spirits' application for license renewal. The Commission determined that because of Wine & Spirits' relationship to a distiller, it was ineligible for licensing as a distributor. It further found that the fact that prior licenses were issued to Wine & Spirits did not bind the Commission to continue the renewal.

Wine & Spirits filed an action for administrative review in the circuit court. The court reversed the Commission's order and found that Wine & Spirits was eligible to hold the distributor's licenses in question.

The Commission's argument on appeal is that the court erred in finding Wine & Spirits eligible for distributor's licenses because the clear wording of paragraph 121(a) of the Act prohibits the issuance of such licenses to any subsidiary or affiliate of a distiller. The only exception to this broad prohibition is contained in paragraph 121(b) which exempts distillers or their affiliates who held distributor's licenses prior to June 30, 1947. The Commission contends that this exemption cannot apply to Wine & Spirits because it was not even in existence until 1955.

Wine & Spirits argues, however, that Schenley and Affiliated had a distiller-distributor relationship prior to 1947 and therefore come within the purview of paragraph 121(b). Because paragraph 121(b) expressly provides that the prohibitions of paragraph 121(a) "do not apply" to distillers and distributors such as Schenley and Affiliated, they are not prohibited from receiving distributor's licenses or acquiring the shares of another distributor. Consequently, Affiliated's acquisition of Wine & Spirits was an "exempt transaction" which should be treated as though paragraph 121(a) did not exist.

■■ Although Wine & Spirits does not characterize it as such, we believe that paragraph 121(b) is a typical "grandfather" clause. A grandfather clause is commonly regarded as a portion of a statute which establishes different treatment of parties based upon a date certain. (Annot., *Construction of "Grandfather Clause" of Statute or Ordinance Regulating or Licensing Business or Occupation,* 4 A.L.R.2d 667, 691-95 (1949).) Grandfather clauses permit the continuation of otherwise illegal activity in order to obviate unfairness to those who engaged in such activity before it was outlawed by the legislature. (*Harris v. Alcoholic Beverage Control Appeals Board* (1964), 61 Cal. 2d 305, 392 P.2d 1, 38 Cal. Rptr. 409.) Because they create an exception to the general provisions of the statute, such clauses must be strictly construed. *Mid-South Chemical Corp. v. Carpentier* (1958), 14 Ill. 2d 514, 153 N.E.2d 72.

■■ It appears that paragraph 121(b) reflects a decision by the legislature to allow the continuation of activity and licensing that was permitted prior to 1947 in order to avoid inequity. Thus, Schenley and Affiliated may preserve the status quo and continue their distiller-distributor relationship despite the fact that such relationships are deemed undesirable and are now prohibited by paragraph 121(a). However, the plain wording of paragraph 121(b) does not protect Wine & Spirits because Wine & Spirits was not in existence prior to 1947. We do not believe that this statute should be construed in a manner which would allow Schenley and Affiliated to extend their limited privilege by acquiring new distrib-

utorships such as Wine & Spirits through a purchase of shares. This construction would not only allow nonconforming business arrangements such as the one between Schenley and Affiliated to continue, but would also allow them to gain a competitive advantage over businesses which were not in existence prior to 1947. A result such as this is clearly contrary to the policy reasons behind the enactment of paragraph 121 of the Act. Thus, it is our judgment that the acquisition of Wine & Spirits by Affiliated does not fall within the narrow exemption created by paragraph 121(b).

In summary, distributor licensing of Wine & Spirits is clearly prohibited by paragraph 121(a) because of its relationship to Schenley—a distiller. Because we have found that the paragraph 121(b) exemption does not apply to Wine & Spirits, the judgment of the circuit court must be reversed.

Reversed.

ROMITI and LINN, JJ., concur.