[Civ. No. 4875.   Third Appellate District.—May 31, 1933.]

In the Matter of the Application of THE NAPA JOURNAL to have Its Standing as a Newspaper of General Circulation Established.

King & King for Appellant.

Clarence N. Riggins for Respondent.

John A. McGilvray, *Amicus Curiae.*

TUTTLE, J., *pro tem.*—Appellant, "Napa Journal," appeals from an order modifying a judgment establishing its status as a newspaper of general circulation, and adjudging that it has ceased to be such a newspaper. Such procedure is expressly authorized by section 4462 of the Political Code.

On June 30, 1930, a judgment was duly made and entered in the Superior Court of Napa County, whereby it was decreed that appellant was a newspaper of general circulation and "that it is now and has been continuously since the year 1884 established, printed and published at regular intervals at the City of Napa".

On December 9, 1930, respondents George N. Francis and George H. Francis filed a petition to modify, vacate and set aside said judgment, upon the ground that the appellant had ceased to be a newspaper of general circulation, in that it "has for more than two months last past been printed and published in the City of Vallejo, County of Solano". The relief sought was granted by the trial court, which vacated the judgment and decreed that appellant has ceased to be a newspaper of general circulation.

From the agreed statement of facts it appears "that since the first day of October, 1930, a monthly average of less

than fifty per cent of the typesetting required for printing said newspaper has been done in the City of Napa, Napa Township and County of Napa, and more than fifty per cent thereof has been done at the northeasterly corner of Maryland and Napa Streets in the City of Vallejo, County of Solano and State of California. That since said 1st. day of October, 1930, the type so set in the City of Napa has been sent to said address at the northeasterly corner of Maryland and Napa Streets in the City of Vallejo and at that point the forms for the printing of said newspaper have been made up and all the work of impressing the type on the paper has been done. That after said work has been completed the newspapers so produced have been sent to the place of business of said newspaper in the City of Napa and distributed from that point to the subscribers. That the portion of the said work done in the City of Vallejo as aforesaid, has been done at that point because it was more convenient and economical to the owners of the newspaper''.

Under the provisions of sections 4460 and 4463 of the Political Code, a newspaper, in order to establish its status as ''a newspaper of general circulation'', must be *printed* where it is published. It is expressly provided in section 4463 that the word ''printed'' refers to the *mechanical* work of producing the newspaper and that ''if a monthly average of at least fifty per cent of the work of typesetting and a monthly average of at least fifty per cent of the work of impressing types on paper be done in accordance with the other provisions of this title, such shall be deemed to meet the requirements embodied in the word 'printed' ''.

The parties agree that the provisions of the code last quoted were not being complied with at the time of trial and judgment. To meet this situation, appellant relies first upon section 4465 of the Political Code, which was enacted in 1923, and reads as follows:

''Nothing in this title shall be construed to alter the standing of any newspaper which, prior to the passage of this act, was an established newspaper of general circulation, irrespective of whether it has been printed in the place where it is published for a period of one year as required by section four thousand four hundred sixty.''

Appellant earnestly contends that the original judgment of June 30, 1930, not only established its status as of that date, but also established its status as far back as the year 1884. Therefore, they argue, they are exempted from the provisions of the Political Code which require that at least fifty per cent of the printing be done at the place of publication.

An examination of the judgment-roll in the original case shows that in the petition of appellant it is alleged that, "it is now and has been continuously from the year 1884 to the date hereof established, printed and published at regular intervals at the city of Napa". The findings of the court follow those allegations. As we construe the judgment, it simply declares that on *June 30, 1930,* appellant was a newspaper of general circulation. As we view it, the judgment is based upon compliance with the law as it stood in 1930. It therefore follows that where the requirement in respect to printing is not met and observed, the duty of the court is to vacate a former judgment establishing the standing of such newspaper. We do not agree with appellant that the original judgment establishes the standing of appellant prior to the passage of the act (sec. 4465). In our opinion it establishes such standing as of the date it was rendered, and does not relate back to every year since 1884.

The act of the legislature defining the word "printed" was passed in 1923. Section 4465 of the Political Code is the concluding portion thereof. The legislature was no doubt apprehensive that the enactment might invalidate publications made prior to the passage thereof, and accordingly made the operation of the act, so far as it related to the requirement of printing, prospective only. Consequently, it is the duty of every newspaper, if it would retain its status as one of general circulation, to meet the requirement as to "printing" according to the present law. This section says that the act does not *alter* the status of newspapers which failed to comply with this requirement and were otherwise established newspapers prior to 1923, but it does not obviate compliance with the entire act thereafter.

It is next contended that the requirement as to printing is an unlawful exercise of police power. This

precise point was raised in the case of the *"Application of Monrovia Evening Post,"* 199 Cal. 263 [248 Pac. 1017], and it was there held that the statute was constitutional and valid. We are of the opinion that an independent country press is vital to the maintenance of our institutions and a democratic form of government, and the legislature is justified in adopting legislation of this character to promote the general welfare.

Other points raised by appellant are without merit and no extended discussion of them is necessary.

The judgment is affirmed.

Plummer, J., and Pullen, P. J., concurred.