[Civ. No. 7068. Fourth Dist. Mar. 25, 1963.]

In re THE ANAHEIM DAILY GAZETTE, a Newspaper of General .Circulation. RICHARD FISCHLE, Plaintiff and Appellant, v. COACHELLA VALLEY PUBLISHING COMPANY, Defendant and Respondent.

Arthur M. Bradley and Kaufman & Morgan for Plaintiff and Appellant.

Adams, Duque & Hazeltine and John H. Brinsley for Defendant and Respondent.

GRIFFIN, P. J.—This matter comes to us on an agreed statement of facts showing generally that on January 22, 1953, the Anaheim Gazette, a corporation, filed a petition in the Superior Court of Orange County which sought to have the Anaheim Daily Gazette legally adjudicated a newspaper of general circulation in the City of Anaheim, County of Orange.

The petition, as filed, contained among other things the following allegations: (1) That the Anaheim Daily Gazette is a newspaper established, printed and published at regular intervals for the dissemination of local and telegraphic news and intelligence of a general character in Anaheim, Orange County. (2) That the Anaheim Daily Gazette has a bona fide subscription list of paying subscribers and has been established, printed and published at regular intervals in the City of Anaheim, County of Orange, for more than one year immediately preceding the filing of this petition. (3) That applicant was established as a weekly newspaper in Orange County in 1870 and has published a weekly newspaper continuously since then until May 8, 1950, at which time applicant started the publication of a daily newspaper in Anaheim, Orange County, and has, ever since May 8, 1950, continuously published a daily newspaper five days a week in Anaheim, Orange County.

The court, after finding all the allegations of the petition to be true and correct, made its order on February 13, 1953, declaring the Anaheim Daily Gazette to be a newspaper of general circulation in the City of Anaheim, County of Orange, within the meaning and intent of Government Code, chapter 1, division 7, title 1.

Pursuant to the provisions of section 6024 of the Government Code, Richard Fischle filed a petition on December 6, 1961, which sought to vacate the judgment previously entered declaring the Anaheim Daily Gazette to be a newspaper of general circulation in the City of Anaheim, County of Orange; the petition was based on the allegation that the stated newspaper had ceased to be a newspaper of general circulation as that term is defined in Government Code, Section 6000, in that "said Anaheim Daily Gazette is not printed and published as those terms are defined in sections 6003 and 6004 of the Government Code" in the City of Anaheim, but is printed in the City of Orange, County of Orange.

The Coachella Valley Publishing Company is the present owner and publisher of the involved newspaper, now called the "Anaheim Gazette" and was duly served and appeared in opposition to the petition of Richard Fischle. It was stipulated by the parties, through their respective attorneys of record, in open court, that the petition to vacate judgment be considered thereafter as a petition to modify the judgment of 1953, since it was agreed by the parties that the Anaheim Gazette was still a newspaper of general circulation

within the County of Orange. Evidence was introduced at the hearing and the court subsequently found that the Anaheim Gazette has been continuously in existence with a bona fide subscription list of paying subscribers from 1870 until the present date; that the newspaper is now, and has been since its inception, established, printed and published at regular intervals for the dissemination of local or telegraphic news and intelligence of a general character in the County of Orange; that said newspaper, *prior to 1923,* was *established, printed* and *published* at regular intervals in the *City of Anaheim,* County of Orange; that it was printing legal notices, advertisements, resolutions, orders and other official publications of the *City of Anaheim* prior to *1923* and that said newspaper is presently printed in the City of Orange, County of Orange; that the Anaheim Gazette and the Anaheim Daily Gazette are one and the same newspaper and that the newspaper has been continuously in existence with a bona fide subscription list of paying subscribers from 1870 until the present date. By stipulation of counsel, the petition to vacate judgment determining the newspaper to be one of general circulation, which is the subject of this proceeding, applies only to the City of Anaheim and not to the County of Orange.

The court then concluded that the Anaheim Gazette is a newspaper of general circulation in the City of Anaheim, County of Orange; that the petition of Richard Fischle to vacate and modify the judgment of the above entitled court entered February 16, 1953, should be denied. Judgment was entered accordingly.

It is agreed that the only question presented by this appeal is whether the Anaheim Gazette is a newspaper of general circulation within the City of Anaheim and whether the court erred as a matter of law in refusing to grant appellant's petition to modify the judgment rendered on February 13, 1953, declaring the Anaheim Daily Gazette a newspaper of general circulation. The question, reduced to a minimum, involves the fact, as found by the court, that prior to 1923, the newspaper was established, printed and published in the *City of Anaheim,* and now it has moved its printing establishment and is printed in the nearby City of Orange in Orange County, and accordingly it is contended that it ceased to be a newspaper of general circulation in the City of Anaheim. It was this move which formed the basis for the filing of appellant's petition on December 6, 1961. The court found that the newspaper was still a newspaper of general circula-

tion in the *City of Anaheim,* based on the legislative intent expressed in Government Code, section 6006, as amended in 1961, and the reasoning expressed in *In re Byers,* 219 Cal. 446 [27 P.2d 641]. See also *Hunter* v. *Justice's Court,* 36 Cal.2d 315, 321 [223 P.2d 465], and *People* v. *Western Fruit Growers,* 22 Cal.2d 494, 508 [140 P.2d 13]. Government Code, section 6006, as amended in 1961, provides: "Nothing in this chapter alters the standing of any newspaper which, prior to the passage of Chapter 258 of the Statutes of 1923, was an established newspaper of general circulation, irrespective of whether it was printed in the place where it was published for a period of one year as required."

Just prior thereto, it had an exception, i.e.:

". . . provided, however, that this section shall apply only in the event that said newspaper has altered neither the county, nor the town, nor the city of its publication or printing, or both, since the effective date of this act."

This latter portion was eliminated by the 1961 amendment. Under the exception, before elimination, and the holding in the cases of *In re Covina Argus-Citizen,* 177 Cal.App.2d 315 [1 Cal.Rptr. 184], and *In re The Napa Journal,* 132 Cal.App. 339 [22 P.2d 772], a reversal would be compelled.

We must conclude that the elimination of the proviso (portion repealed) was done for a purpose. The repeal placed the section back to its original interpretation as expressed in *In re Byers, supra,* 219 Cal. 446, where it was held that the present acts are not retroactive and apply only to such newspapers as were not *established* as newspapers of general circulation at the date of the enactment of the section in 1923.

The only question remaining is whether the facts show that the Anaheim Daily Gazette was, prior to 1923, a newspaper *established,* printed and published at regular intervals in Anaheim at that time. The court found and made its order that the Anaheim Gazette was a newspaper of general circulation in the City of Anaheim, County of Orange. It then found that said newspaper, *prior to 1923,* was *established,* printed and published at regular intervals for the dissemination of local and telegraphic news and intelligence of a general character in the *City of Anaheim,* County of Orange, and that it was printing legal notices, advertisements, resolutions, orders, and other official publications in the City of Anaheim prior to 1923 and is presently printed in the City of Orange.

The particular point is whether the newspaper was, as a matter of fact, *established*, printed and published as indicated prior to 1923, or whether it was not *established* until the signing of the decree on February 13, 1953. The term "established newspaper," as used in Government Code, section 6006, *supra*, has been defined in section 6002, Government Code. It provides:

. "For a newspaper to be 'established,' it shall have been in existence under a specified name during the whole of the one-year period.

Section 6020 provides a method to establish this standing and relates:

"Whenever a newspaper desires to have its standing as a newspaper of general circulation ascertained and established, it may, by its publisher . . . file a verified petition in the superior court of the county in which it is *established*, printed and published, setting forth the facts which justify such action." (Italics ours.)

■ It might well appear that one might prove facts sufficient to show that a newspaper has complied with all the provisions of the law and occupied the status of a newspaper as one of general circulation and was *established*, printed and published as required by law, without further proof by decree of court establishing such fact. Such a decree would be conclusive without further showing. (*In re Herman*, 183 Cal. 153 [191 P. 934].)

Opposed to this contention is the case of *In re The Napa Journal*, *supra*, 132 Cal.App. 339 (May 1933; no hearing sought), where it was held that the judgment establishing the status of the newspaper as one of general circulation, rendered in 1930, did not establish the standing of such newspaper prior to the passage in 1923 of the exemption and it did not relate back to the year 1884 when the newspaper was first established, printed and published, but only established such standing as of the date it was rendered, and that when the requirement in respect to printing was not met and observed, it was the duty of the court to vacate the judgment establishing the standing of such newspaper.

*In re Byers*, *supra*, 219 Cal. 446 (November 1933), appears to be opposed to this holding. In that case, by a decree of December 30, 1915, the Peninsula News was adjudicated to be a newspaper of general circulation, printed and published in the City of San Bruno and it was later consolidated with the San Bruno Herald and Peninsula News in San Bruno, and

was so printed and published up to December 14, 1931, and thereafter. On December 14, 1931, petitioner filed his petition to have the order of December 30, 1915, vacated and set aside on the ground that for more than one year the mechanical work of typesetting and impressing types on paper had not been done in San Bruno. The trial court refused the decree. The argument was that although the Peninsula News complied with the law in every respect up to the date of the decree of December 30, 1915, establishing it as a newspaper of general circulation, it did not then meet the requirements of Political Code, section 4463, in effect in 1923, and therefore it lost its standing as a newspaper of general circulation. The Supreme Court said that there might have been some force to the argument had not the Legislature, at the same time, enacted section 4465, Political Code (now Gov. Code, § 6006), which provides for the exception above related. It said, at page 449:

"The intent and purpose of the legislature in the enactment of said section 4465 is, in our opinion, perfectly clear. By express pronouncement it is provided that nothing therein should be construed to alter the standing of any newspaper which at that date was an established newspaper of general circulation, even though it had not been printed in the place where it was published for a period of one year as required by section 4460. . . . Accordingly, by the terms of section 4465, newspapers of general circulation established as such at the date of the enactment of section 4463 were not in any manner affected by the provisions of said section even though they failed to meet the requirements of such legislation. In other words, it was the clear intent and purpose of the legislature not to make the statute retroactive, but to confine its application to such newspapers as were not, at that date, newspapers of general circulation."

The legislative history of section 6006, as presented by counsel for respondent, shows that this section was first enacted in 1923 as section 4465 of the Political Code, which read:

"Nothing in this title shall be construed to alter the standing of any newspaper which, prior to the passage of this act, was an established newspaper of general circulation, irrespective of whether it has been printed in the place where it is published for a period of one year as required by section four thousand four hundred sixty."

As a result of the general codification of the law in 1943, this section became section 6006 of the Government Code.

Its wording was identical to the present language of the section quoted above (Pol. Code, § 4465). Then, in 1951, the section was amended to read as follows:

"Nothing in this chapter alters the standing of any newspaper which, prior to the passage of Chapter 258 of the Statutes of 1923, was an established newspaper of general circulation, irrespective of whether it was printed in the place where it was published for a period of one year as required; *provided, however, that this section shall apply only in the event that said newspaper has altered neither the county, nor the town, nor the city of its publication or printing, or both, since the effective date of this act.*"

In 1961, section 6006 was amended to its present form by the deletion of the proviso italicized above. (Stats. 1961, ch. 1217, p. 2955.)

 It now appears that section 6006 has the same legal effect as section 4465 of the old Political Code. This statute was applied and construed in *In re Byers, supra,* 219 Cal. 446, a case similar to the one at bar. Apparently, like its predecessor section 4465, section 6006 creates two classes of newspapers of general circulation: those in existence before 1923 and those initiated thereafter, and exempts those venerable publications of the first class from the requirement that printing be done in the place of publication. Apparently, the Legislature recognized this distinction in 1951 when, with the *Byers* case in the books, it amended section 6006, expressly limiting its application to newspapers that had not altered the city of publication or printing since the effective date of the statute. This severe limitation upon the exemptive application of section 6006 was removed in 1961. Thus, the plain meaning of section 6006, as presently in force, is to free newspapers of general circulation in existence before 1923 from the requirement that they be printed in the place of publication. This interpretation is compelled by the unambiguous language of section 6006.

Respondent recites that the *Napa Journal* case was brought to the attention of the Supreme Court on a petition for a rehearing in the *Byers* case, indicating that the decision in the *Byers* case impliedly reversed the decision in the *Napa Journal* case. The petition for hearing was nevertheless denied. Since the court found that the Anaheim Gazette had existed and was established in Anaheim as a newspaper of general circulation, publishing news of local interest to subscribers, and legal notices, since 1870, nearly a hundred years ago, it may

be well indicated that the purpose of deleting the exception in section 6006 in 1961 was to protect such newspapers under the conditions presented.

Judgment affirmed.

Coughlin, J., and Brown (G.), J., concurred.