[Civ. No. 50148. First Dist., Div. One. Jan. 8, 1981.]

BROWN NEWSPAPER PUBLISHING COMPANY, INC.,
Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
INTER-CITY EXPRESS PUBLISHING COMPANY,
Real Party in Interest.

COUNSEL

Peter Hunt, Kathryn S. Wunsch and Hunt & Hunt for Petitioner.

No appearance for Respondent.

Koford, McLeod & Hammer and James K. Koford for Real Party in Interest.

OPINION

**GRODIN, J.**—Petitioner, Brown Newspaper Publishing Company, is the owner and publisher of a newspaper which, under various names, has been published in Berkeley, California, since 1877. In 1952, as the Berkeley Daily Gazette, it obtained a judicial decree adjudging it to be a "newspaper of general circulation" within the meaning of Government Code section 6000[1] et seq., and hence eligible for the publication of matters required by law to be published in a newspaper. (§ 6040 et seq.) In 1979, petitioner filed a motion pursuant to section 6024, subdivision (2)[2] to modify the 1952 decree so as to reflect a change in the newspaper's name to "Independent and Gazette." A business competitor, the Inter-City Express Publishing Company (real party in interest here) appeared in opposition to the motion, contending that the newspaper had undergone changes in its character and identity sufficiently substantial in nature to preclude the granting of the motion. The trial court denied the motion for modification, and we granted an alternative writ of mandate in order to review the propriety of that denial.

---

[1]Government Code section 6000 provides: "A 'newspaper of general circulation' is a newspaper published for the dissemination of local or telegraphic news and intelligence of a general character, which has a bona fide subscription list of paying subscribers, and has been established, printed and published at regular intervals in the State, county, or city where publication, notice by publication, or official advertising is to be given or made for at least one year preceding the date of the publication, notice or advertisement."

Hereinafter all references are to the Government Code unless designated otherwise.

[2]Section 6024, subdivision (2) provides: "The decision and judgment may be modified by the court on its own motion, or on the motion of any person interested, whether a party to the original proceeding or not, upon a similar verified statement and the same notice and a satisfactory showing made to the court that the newspaper has modified its name without any substantial change in its character or identity as a newspaper of general circulation."

The facts, as reflected in the trial court's findings, are not significantly in dispute. In 1965 the Berkeley Daily Gazette was purchased by Owens Publications, Inc., which also owned the Richmond Independent, a newspaper published in Richmond, California; and beginning in 1966 both newspapers were physically printed in Richmond. In 1972 both newspapers were acquired by petitioner. On January 1, 1979, the names of both newspapers were changed to Independent and Gazette.

Following this name change, both papers have carried the same volume and issue numbers on their datelines each day. The Independent and Gazette has been published in four editions, distributed on the street and by subscription in both the Berkeley and the Richmond areas, each area being supplied with two of such editions. While the greater part of the staff is employed in Richmond, certain editorial, advertising, and circulation employees work in Berkeley exclusively on the Berkeley editions; and although much of the material in all editions is the same, certain news and editorial comment of interest peculiar to each community appears in such community's editions. Beneath the masthead of the Richmond editions is the inscription "Contra Costa County's Newspaper." Beneath the masthead of the Berkeley editions is the inscription "Serving Berkeley for 101 Years."

From these facts, the trial court concluded that the Berkeley paper had "substantially changed" from the newspaper which was deemed to be an established paper in 1952. By way of explanation, the conclusions of law reflect the following reasoning: "The Independent and Gazette is no longer printed in Berkeley. It can be relieved of the requirement that it be printed in the place for which it seeks adjudication only if it is entitled to the protection of the 'grandfather' provision of Section 6006. *It is not entitled to such protection for the reason that it did not rely upon, and had no need to rely upon, that code section at the time of its adjudication.* It was then printed in the City of Berkeley. A change in the place of printing is a substantial change. Section 6006 was not intended to relieve a petitioner from the substantial change restraint of Section 6024(2)." (Italics added.)

Section 6006, to which the trial court referred, relates to the requirement that in order to be a newspaper of general circulation at least 50 percent of the mechanical work of typesetting and impressing type on paper must be performed in the area where the publication is to appear. (§§ 6003, 6004.) That requirement was first imposed in 1923, but sec-

tion 6006, adopted at the same time, declares "Nothing in this chapter alters the standing of any newspaper which, prior to the passage of Chapter 258 of the Statutes of 1923, was an established newspaper of general circulation, irrespective of whether it was printed in the place where it was published for a period of one year as required." The Supreme Court found this language to reflect "the clear intent and purpose of the legislature not to make [the printing requirement] retroactive, but to confine its application to such newspapers as were not, [as of 1923,] newspapers of general circulation." (*In re Byers* (1933) 219 Cal. 446, 450 [27 P.2d 641].)

Thereafter, the Legislature displayed some ambivalence toward the "grandfather" provision. In 1951, it adopted a proviso to section 6006 stating that the provision "shall apply only in the event that said newspaper has altered neither the county, nor the town, nor the city of its publication or printing, or both, since the effective date of this act." (Stats. 1951, ch. 1044, § 1.) Ten years later, however, the proviso was eliminated by amendment. (Stats. 1961, ch. 1217, § 1.)

■ The effect of the 1961 amendment, it has been held, was to restore the *Byers* interpretation of section 6006 as creating "'two classes of newspapers of general circulation: those in existence before 1923 and those initiated thereafter, and exempt[ing] *those venerable publications of the first class from the requirement that printing be done in the place of publication.*'" (*In re Norwalk Call* (1964) 62 Cal.2d 185, 189, fn. 2 [41 Cal.Rptr. 666, 397 P.2d 426], italics added, quoting from and approving *In re Anaheim Daily Gazette* (1963) 214 Cal.App.2d 438 [29 Cal.Rptr. 520].) Thus, if a newspaper met all the requirements to qualify as an established newspaper of general circulation before 1923, it does not become disqualified by reason of the fact that at some subsequent time it ceases to be printed in the area where it is published. Indeed, that was precisely the fact pattern in both the cited cases (*In re Norwalk Call, supra*, at p. 186; *In re Anaheim Daily Gazette, supra*).

■ It is undisputed that petitioner's newspaper met all the requirements to qualify as an established newspaper of general circulation before 1923, and it is therefore entitled to the exemption as a matter of law. The fact that it did not rely upon the exemption in 1952, when its status as a newspaper of general circulation was adjudicated, does not negate that entitlement. Prior to 1952, newspapers of general circulation were not required to obtain a court decree as to their status. (See

*In re Norwalk Call, supra*, 62 Cal.2d 185, 189.) In 1952, when petitioner sought its decree as then required,[3] it met all requirements for qualification as a newspaper of general circulation *including* the printing requirement, and therefore had no need or occasion to invoke the exemption. Real party has advanced no reason, and we perceive no reason, for concluding that under these circumstances petitioner's exemption has been lost.

In light of our conclusion that petitioner was and is entitled to the section 6006 exemption from the printing requirement, it follows that a change in its place of printing cannot be regarded as a "substantial change in its character or identity as a newspaper of general circulation" within the meaning of section 6024, subdivision (2) so as to deprive it of the right to a judicial determination that it continues to qualify. "It is well established that a specific provision should be construed with reference to the entire statutory system of which it is a part, in such a way that the various elements of the overall scheme are harmonized." (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 489 [134 Cal.Rptr. 630, 556 P.2d 1081]; *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 918 [80 Cal.Rptr. 89, 458 P.2d 33].) To say that what the Legislature gave with one hand in section 6006 it took away with the other in section 6024, subdivision (2) would be contrary to that principle.

It appears from the findings of fact and conclusions of law and from the memorandum of decision that the trial court did not consider the change in name and ownership of the Gazette and the consolidation with the Independent in the manner described to constitute "substantial change in its character or identity as a newspaper of general circulation," and we agree. Certainly they were not changes which would independently affect the newspaper's qualification to serve as a newspaper of general circulation. (Cf. *In re Covina Argus-Citizen* (1960) 177 Cal.App.2d 315 [1 Cal.Rptr. 184].) "The purpose of limiting publication to newspapers meeting certain standards is to assure that the published material will come to the attention of a substantial number of persons in the area affected ...." (*In re Norwalk Call, supra*, 62 Cal.2d at p. 190.) Nothing in the changes which have occurred in the life of petitioner appears or is even alleged to affect that purpose.

---

[3] In 1951, section 6027 was amended to read: "On or after July 1, 1952, a newspaper shall not be in fact or in law a newspaper of general circulation unless it obtains or has theretofore obtained a judicial decree establishing it as having such status pursuant to the provisions of this article."

Nor are these changes such as would require a new one-year waiting period under section 6000. In *In re Gluckman* (1936) 6 Cal.2d 455 [58 P.2d 166], where two newspapers published in different towns were consolidated for the express purpose of enabling one of them to avoid the waiting period, the Supreme Court held "the substantive purpose of the requirement of legal status for the publication of legal notices in a paper of general circulation will be as fully subserved as if such publication appeared in each of the two papers so consolidated." (*Id.*, at p. 456. See also *In re Byers, supra*, 219 Cal. 446.)

Finally, these other changes are not such as to warrant the conclusion that petitioner's newspaper has lost its section 6006 exemption from the printing requirement. There is nothing in the record to suggest that the changes have affected the continuing identity of the newspaper as it is perceived by the local public or in relationship to the function which a newspaper of general circulation is called upon to perform. While the publisher, editor-in-chief and some specialty editors serve both newspapers, the editor-in-chief maintains offices in both Berkeley and Richmond; and in most other respects there are in effect two newspapers, each with its own local office, paid subscription lists, street sale locations, local news copy, and legal advertising.

We conclude that the petitioner is entitled to a judicial order modifying the 1952 decree to reflect modification of the newspaper's name, and a writ of mandate will issue to that effect.

Racanelli, P. J., and Elkington, J., concurred.