Filed 5/7/15

CERTIFIED FOR PUBLICATION

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

In re Establishment of The Press-Enterprise as a Newspaper of General Circulation.

ANITA DAVIS,

      Petitioner and Respondent,

v.

SENTINEL WEEKLY NEWS,

      Contestant and Appellant.

E058979

(Super.Ct.No. RIC1215735)

OPINION

APPEAL from the Superior Court of Riverside County.  Daniel A. Ottolia, Judge.  Reversed.

Kirby Noonan Lance & Hoge and Michael L. Kirby for Contestant and Appellant.

Best Best & Krieger, Kira L. Klatchko, Kendall H. MacVey and Irene S. Zurko for Petitioner and Respondent.

1

Some notices, such as foreclosure notices, are required by law to be published in "a newspaper of general circulation." (Gov. Code, § 6040;[1] *Press Democrat v. Sonoma County Herald Recorder* (2012) 207 Cal.App.4th 578, 580 (*Press Democrat*).) A "newspaper of general circulation" is defined as "a newspaper published for the dissemination of local or telegraphic news and intelligence of a general character, which has a bona fide subscription list of paying subscribers, and has been established, printed and published at regular intervals in the state, county, or city where publication, notice by publication, or official advertising is to be given or made for at least one year preceding the date of the publication, notice or advertisement. (§ 6000.)

There is an exception to the requirement that a newspaper must be printed in the place of publication. (§ 6006.) If, prior to 1923, a newspaper was an established newspaper of general circulation—meeting the requirements that were in place at that time—then it is exempt from the printing/location requirement set forth in general rule (§ 6000). (§ 6006; *Press Democrat*, *supra*, 207 Cal.App.4th at p. 580.)

Petitioner and respondent Anita Davis, advertising director of the Press-Enterprise newspaper, petitioned the trial court for a judgment establishing the Press-Enterprise as a newspaper of general circulation for the City of Corona (Corona).[2] For ease of reference, we will refer to the petitioner as "Press-Enterprise." Press-

---

[1] All subsequent statutory references will be to the Government Code unless otherwise indicated.

[2] The original petitioner in the case was Jeannie Goodman, who was employed as a manager of the Press-Enterprise's newspaper. This court granted a substitution of party, replacing Jeannie Goodman with Anita Davis as petitioner and respondent.

Enterprise's newspaper is not printed in Corona, and therefore, Press-Enterprise relied upon the exception in section 6006 when making its argument. The trial court adjudged the Press-Enterprise to be a newspaper of general circulation for Corona. Contestant and appellant Sentinel Weekly News (Sentinel) contends the trial court erred because Press-Enterprise's newspaper did not qualify for the section 6006 exemption. We reverse the judgment.

## FACTUAL AND PROCEDURAL HISTORY

### A. PETITION

On October 19, 2012, Press-Enterprise petitioned the trial court for a judgment establishing Press-Enterprise's newspaper as a newspaper of general circulation for Corona. Press-Enterprise provided a memorandum of points and authorities in support of its petition. In the memorandum, relying on the section 6006 exemption, Press-Enterprise asserted its newspaper is a newspaper of general circulation because it has been published in Riverside County (the County) since 1878, disseminating local or telegraphic news of general character, on a regular basis (six days per week), with a bona fide list of subscribers. Press-Enterprise asserted it published legal notices in 1895.

Corona was incorporated as a city in 1896. Press-Enterprise reasoned that since it was a newspaper of general circulation for the County, while the area that became Corona was an unincorporated part the County, Press-Enterprise's newspaper remained a newspaper of general circulation for Corona after Corona incorporated. In other

3

words, the incorporation of the city did not change Press-Enterprise's status as a newspaper of general circulation for the area that became Corona.

Press-Enterprise presented a secondary argument as well. In the secondary argument, Press-Enterprise asserted that *after* Corona incorporated, but prior to 1923, its newspaper became a newspaper of general circulation within Corona because (1) it was published six days per week, and (2) circulated to a bona fide list of 71 subscribers in Corona.

B.     OPPOSITION

Sentinel, whose offices are in Corona, opposed Press-Enterprise's petition. Sentinel asserted the petition "is silent as to whether The Press-Enterprise has ever been printed in the City of Corona." Sentinel asserted Press-Enterprise failed to meet the exception in section 6006 "with respect to the printing requirement."

C.     FIRST HEARING

On November 21, 2012, the trial court held a hearing in the case. The trial court announced its tentative decision: "Court finds that the Press Enterprise has met all pre 1923 requirements to be a newspaper of general circulation prior to the incorporation of the city of Corona pursuant to Government Code Section 6006. [¶] In addition, it appears that post 1923, the Press Enterprise has met the requirements of general circulation as well. [¶] On that basis, the Court would grant the petition."

Sentinel asserted Press-Enterprise had incorrectly read the law related to Press-Enterprise's first argument concerning being a newspaper of general circulation for the County, and thereby automatically becoming a newspaper of general circulation for the

4

newly incorporated Corona. Sentinel argued that if the law provided for such automatic status then "every older newspaper would be adjudicated in every city incorporated after 1923 even if it didn't have a presence in that community." Sentinel asserted the correct reading of the law is that if a newspaper of general circulation is operating in an unincorporated area, and that area then incorporates, the newspaper can remain a newspaper of general circulation for the newly incorporated area; however, the newspaper must have operations based in the relevant area.

Press-Enterprise asserted, "some kind of general circulation activity prior to the incorporation of a city" was all the law required. Thus, since Press-Enterprise's newspaper circulated in Corona prior to Corona incorporating in 1896, Press-Enterprise met the section 6006 exemption. Sentinel argued that Press-Enterprise had misinterpreted the law. The trial court took the matter under submission saying it would reread the relevant law.

D.    SUPPLEMENTAL OPPOSITION

Sentinel filed a supplemental opposition. Sentinel asserted Press-Enterprise was misstating the law regarding a newspaper of general circulation for a county automatically becoming a newspaper of general circulation for cities incorporated in the county. Sentinel argued a newspaper must meet all the legal requirements for "a newspaper of general circulation," i.e., there is not an automatic status conferred.

The day prior to the November 2012 hearing, Press-Enterprise had filed a supplemental declaration with a notice from a 1922 edition of the newspaper attached. The notice was a Notice of Sale for real property belonging to an incompetent person.

The property was situated in Corona. The sale was scheduled to take place in the City of Riverside. The notice of sale was published in the Press-Enterprise's newspaper on February 23, 1922. In Sentinel's opposition, it asserted there was nothing indicating the 1922 notice, or 1895 notices that Press-Enterprise had produced, were the type of notices that were required to be published in a newspaper of general circulation for Corona. As a result, Sentinel asserted Press-Enterprise had not established it was a newspaper of general circulation in Corona prior to 1923.

E.    SUPPLEMENTAL SUPPORT FOR THE PETITION

Press-Enterprise filed supplemental support for its petition. Press-Enterprise reiterated that, prior to 1923, its newspaper was published six days per week, it disseminated local or telegraphic news of a general character, and the newspaper circulated to a bona fide list of 71 subscribers within Corona. Press-Enterprise argued that, based upon this evidence, its newspaper qualified as a newspaper of general circulation in Corona.

Press-Enterprise also reiterated its assertion that its newspaper automatically qualified as a newspaper of general circulation in Corona because, prior to Corona's incorporation, the newspaper was a newspaper of general circulation in the County.

F.    SECOND HEARING

On January 31, 2013, the trial court held another hearing in the matter. At the beginning of the hearing, the trial court provided its tentative ruling: "[T]he Press-Enterprise meets the requirements of Government Code section 6000 and the exemption under 6006. So the Court would grant the petition."

6

Sentinel argued that Press-Enterprise failed to prove the newspaper qualified as a newspaper of general circulation prior to 1923. In particular, Sentinel asserted there was nothing indicating Press-Enterprise published legal notices that were required to be published in Corona prior to 1923.

Press-Enterprise clarified that it was relying on the exception in section 6006. Despite the trial court's tentative opinion, Press-Enterprise conceded it did not meet the section 6000 requirements because the newspaper is not printed in Corona. Press-Enterprise argued that providing legal notices published before 1923 was an alternative means of proving a newspaper was a newspaper of general circulation. Press-Enterprise argued that in addition to the notice evidence, it also showed the newspaper was regularly published, and there were subscribers in Corona prior to 1923. Therefore, Press-Enterprise asserted, "This is a newspaper that was publishing in Corona."

After the Press-Enterprise's argument, the trial court asked when Corona was incorporated. Press-Enterprise's counsel responded, "1896." The trial court then said, "The Court will stand by its tentative, grant the petition."

## DISCUSSION

A.    <u>OVERVIEW OF THE LAW</u>

"The Government Code provides that whenever any official advertising, notice, resolution, order, or other matter is required by law to be published in a newspaper, such publication shall be made only in a 'newspaper of general circulation' (§ 6040), and that term is defined in section 6000 as a newspaper for the dissemination of news and intelligence of a general character which has a bona fide subscription list of paying

7

subscribers and has been 'established, printed and published' at regular intervals for at least one year preceding publication in the state, county, or city where the publication is to be made.  The word 'established' is defined as referring to a newspaper which has been in existence under a specified name for the whole of the one-year period. (§ 6002.)  Until 1923 a newspaper could qualify as 'printed and published' within the meaning of the predecessor of section 6000 even though the physical act of printing was not performed in the place where the paper was to appear [citation], but in that year the Legislature adopted provisions, still in effect, defining 'printed' and 'published' in such a manner that a newspaper could not be deemed one of general circulation for an area unless 50 percent of the mechanical work of typesetting and impressing type on paper was completed there.  (§§ 6003, 6004.)" (*In re Norwalk Call* (1964) 62 Cal.2d 185, 186-187, fn. omitted.)

"Also in 1923, however, the Legislature enacted the provision involved in this proceeding (§ 6006), declaring, 'Nothing in this chapter alters the standing of any newspaper which, prior to the passage of Chapter 258 of the Statutes of 1923, was an established newspaper of general circulation, irrespective of whether it was printed in the place where it was published for a period of one year as required.'" (*In re Norwalk Call*, *supra*, 62 Cal.2d at p. 187.)  Therefore, if "a newspaper met all the requirements to qualify as an established newspaper of general circulation before 1923 and has continued to meet all the standards in force at that time," then it may rely on the exception in section 6006 concerning printing location.  (*Norwalk Call*, at p. 189.)

8

Prior to 1923, the law provided, "'A newspaper of general circulation is a newspaper published for the dissemination of local or telegraphic news and intelligence of a general character, having a bona fide subscription list of paying subscribers, and which shall have been established, printed and published at regular intervals, in the state, county, city, city and county, or town, where such publication, notice by publication, or official advertising is given or made, for at least one year preceding the date of such publication, notice or advertisement.'" (*In re McDonald* (1921) 187 Cal. 158, 159 (*McDonald*).)

In 1921, the Supreme Court considered whether a newspaper, the "'Ontario Weekly Herald'" was a newspaper of general circulation for Ontario, when the offices for the newspaper were in Ontario, Ontario was the newspaper's principal place of circulation, and a city license to conduct the newspaper's business was paid to the city of Ontario, but the newspaper was physically printed in Colton. The Supreme Court framed the issue as "whether the fact that the physical printing of the paper is done in one town, and the publication and circulation in another, prevents it from being a newspaper of general circulation within the meaning of the statute." (*McDonald*, *supra*, 187 Cal. at p. 159.)

The Supreme Court explained that the purpose of the law is to define the term newspaper in a manner that would allow important notices to reach the community affected by the information in the notices. (*McDonald*, *supra*, 187 Cal.2d at pp. 159-160.) The court explained that since the newspaper's offices were in Ontario and its taxes were paid in Ontario, the newspaper was "caused to be printed in Ontario,"

9

published in Ontario, and circulated in Ontario. The court reasoned that production of the newspaper was done in Ontario, "save the setting up of the type and making the impressions on the paper." (*Id.* at p. 161.) The court determined that limiting the definition of "printed" to setting type and impressing words on paper would be too strict of a limit. Therefore, "[t]he only reasonable construction that can be given to 'printed and published' is that the paper must be produced in the community where it is aimed to have it recognized as a legal advertising medium." (*Id.* at p. 161.)

Thus, the section 6006 exception protects newspapers such as the Ontario Weekly Herald. For example, prior to 1923, a newspaper such as the Ontario Weekly Herald could be a newspaper of general circulation in Ontario even though it was printed in Colton because all the other aspects of the newspaper's production occurred in Ontario. Upon passage of the 1923 law requiring printing to take place in the relevant city, the Ontario Weekly Herald could have lost its status as a newspaper of general circulation for Ontario, if not for the section 6006 exception for newspapers established as newspapers of general circulation prior to 1923. Due to that exception, the Ontario Weekly Herald could remain a newspaper of general circulation for Ontario.

Section 6006 also protects newspapers that had a connection to a particular area, e.g. printing or producing the newspaper in the city, but have relocated. As an example, the exemption (§ 6006) applies wherein a newspaper was printed in Anaheim prior to 1923, but then moved its printing operations to the City of Orange after 1923. Although the newspaper is no longer printed in Anaheim, under the section 6006 exemption, since it was a newspaper of general circulation in Anaheim prior to 1923, it can continue to be

10

a newspaper of general circulation in Anaheim, even though it is now printed in the City of Orange. (*In re Anaheim Daily Gazette* (1963) 214 Cal.App.2d 438, 440-441, 444-445.)

At oral argument in this court, the Press-Enterprise repeatedly cited to the case of *In re Byers* (1933) 219 Cal.446 (*Byers*). In *Byers*, a newspaper, the "Peninsula News," had, in 1915, been adjudicated a newspaper of general circulation for the City of San Bruno. At that time (1915) the newspaper was printed and published in the City of San Bruno. The "Peninsula News" later consolidated with the "San Bruno Herald." The newspaper was then published as the consolidated "San Bruno Herald and Peninsula News." (*Byers*, at p. 447.)

In 1931, E.E. Bramble petitioned the trial court to vacate the 1915 adjudication on the ground that for one year prior to the filing of the petition, the mechanical work of printing of the newspaper had not been done in the City of San Bruno. The proprietors of the "San Bruno Herald and Peninsula News" conceded the mechanical work of printing the merged newspaper was not conducted in San Bruno. Bramble lost in the trial court. (*Byers*, *supra*, 219 Cal. at pp. 447-448.)

The Supreme Court noted that prior to 1923, in *McDonald*, *supra*, the court had held "a newspaper was printed and published in a city or locality if it was issued and circulated there, although the mechanical work of producing the paper was done in some other city or locality." The court also explained the Legislature changed the law in 1923 so that "printed" came to mean "that the mechanical work of producing a

11

newspaper of general circulation shall be performed at the place of its issue and circulation." (*Byers*, *supra*, 219 Cal. at pp. 448-449.)

At the Supreme Court, Bramble argued that the "San Bruno Herald and Peninsula News" lost its standing as a newspaper of general circulation because it did not meet the legal requirements to be a newspaper of general circulation. (*Byers*, *supra*, 219 Cal. at p. 449.) The Supreme Court found Bramble's argument to be unpersuasive because the Legislature had passed a law providing, "'Nothing in this title shall be construed to alter the standing of any newspaper which, prior to the passage of this act, was an established newspaper of general circulation, irrespective of whether it has been printed in the place where it is published for a period of one year . . . .'" (*Ibid.*) The Supreme Court explained that newspapers already established as newspapers of general circulation prior to 1923 were unaffected by the 1923 change in the law requiring printing to take place in the city relevant to the legal notices. (*Id.* at pp. 449-450.) Since the "Peninsula News" had already been adjudicated a newspaper of general circulation, it was unaffected by the 1923 change in the law. The Supreme Court affirmed the trial court's denial of Bramble's petition. (*Id.* at p. 451.)

As set forth *ante,* the exception at issue (§ 6006) requires the newspaper be an established newspaper of general circulation prior to 1923. The exception allows a newspaper that is no longer printed in city X to still be a newspaper of general circulation for city X, so long as it was a newspaper of general circulation for city X prior to 1923. In order to be a newspaper of general circulation prior to 1923, a newspaper must show it: (1) disseminated local or telegraphic news and intelligence of

a general character; (2) had a bona fide subscription list of paying subscribers; and (3) was "established, printed and published" in the city where legal notices are desired to be given for at least one year. (*McDonald*, *supra*, 187 Cal. at p. 159.) Under *McDonald* and *Byers*, the requirement of "established, printed and published" means at some point prior to 1923 the newspaper was printed or in some manner produced in the city at issue. (*McDonald*, at p. 161 [newspaper's office in relevant city]; *Byers*, *supra*, 219 Cal. at pp. 447, 449-450 [predecessor newspaper printed in relevant city in 1915].)

B.      SECTION 6006

Under section 6006, the question is whether Press-Enterprise's newspaper "was, prior to 1923, a newspaper established, printed and published at regular intervals in [Corona] at that time." (*In re Anaheim Daily Gazette*, *supra*, 214 Cal.App.2d at p. 441.) Press-Enterprise asserts we should apply the substantial evidence standard of review because this case involves "competing inferences drawn from the evidence." For the sake of judicial efficiency, rather than analyze if the evidence is truly being disputed, we will apply the substantial evidence standard. (See *H.N. and Frances C. Berger Foundation v. Perez* (2013) 218 Cal.App.4th 37, 43 [de novo standard applies when evidence is undisputed].)

Thus, the issue is whether there is substantial evidence Press-Enterprise's newspaper was printed or otherwise produced in Corona prior to 1923. (*In re Anaheim Daily Gazette*, *supra*, 214 Cal.App.2d at p. 441.) The evidence reflects the newspaper was circulated in Corona. However, the law requires more than circulation; there must be an aspect of production of the newspaper in the relevant city. (*McDonald*, *supra*,

13

187 Cal. at p. 161 ["paper must be produced in the community"].) There is no evidence that the newspaper was produced in Corona prior to 1923. As a result, Press-Enterprise has not met the plain requirements of section 6006 because substantial evidence does not reflect the newspaper was printed or otherwise produced in Corona prior to 1923.

### C.     AUTOMATIC QUALIFICATION

Press-Enterprise contends its newspaper is a newspaper of general circulation in Corona because it automatically qualified as such when Corona incorporated. Press-Enterprise asserts its newspaper met the requirements of a newspaper of general circulation for the *County* in 1895, so when Corona incorporated in 1896, the newspaper automatically became a newspaper of general circulation for the newly incorporated city, because the change in the city's incorporation status would not have changed the newspaper's status.

We apply the de novo standard of review because this issue centers on interpreting the law. (*Automotive Funding Group, Inc. v. Garamendi* (2003) 114 Cal.App.4th 846, 851.)

*In re Norwalk Call* concerns a newspaper known as "Norwalk Call" which, in the 1960s, petitioned to be declared a newspaper of general circulation in the City of Norwalk. (*In re Norwalk Call*, *supra*, 62 Cal.2d at pp. 186, 188.) It was undisputed that, prior to 1923, the newspaper's company "conducted its operations in the township of Norwalk, then unincorporated, in a manner entitling it to be a newspaper of general circulation under the law then existing." (*Id*. at p. 187.) Norwalk Call asserted it did

14

not meet the printing/location requirement under the general rule (§ 6000), so it necessarily relied on the section 6006 exception. (*Norwalk Call*, at p. 187.)

The party opposing the petition asserted the newspaper could not be a newspaper of general circulation in the City of Norwalk based upon the section 6006 exception because the City of Norwalk was not incorporated until after 1923. (*In re Norwalk Call*, *supra*, 62 Cal.2d at pp. 189-190.) The Supreme Court explained that the purpose of having newspapers meet certain criteria was to ensure that the published notices come to the attention of a substantial number of people that may be in the affected area. Therefore, "changes in the political structure or names of governmental entities within [the] area," e.g., from unincorporated to incorporated, is irrelevant if the newspaper "has been an established one of general circulation for a given territorial area." (*Ibid.*) A divided Supreme Court affirmed the ruling establishing Norwalk Call as a newspaper of general circulation for the City of Norwalk; three justices dissented and would have reversed the judgment. (*Id.* at pp. 186, 190, 193.)

Press-Enterprise asserts that, under *In re Norwalk Call*, since Press-Enterprise's newspaper was a newspaper of general circulation for the County in 1895, which included the unincorporated area of Corona, when Corona incorporated in 1896, the newspaper automatically became a newspaper of general circulation for the newly incorporated city. Press-Enterprise has read *In re Norwalk Call* too broadly. *In re Norwalk Call* does not create an "automatic qualification" rule for any city incorporated in a county after the newspaper establishes itself as a newspaper of general circulation for the county. Rather, *In re Norwalk Call* explains that if, prior to 1923, a newspaper

15

operated in an unincorporated area of a county and circulated in that area, and then that area incorporates as a city and the newspaper is still circulated in that original area, the newspaper can still be a newspaper of general circulation for that newly incorporated area. The primary point being, prior to 1923, the newspaper operations took place in the unincorporated area that became the city. For example, prior to 1923, Norwalk Call "conducted its operations in the township of Norwalk, then unincorporated," and later sought to be a newspaper of general circulation in the incorporated city of Norwalk. (*In re Norwalk Call*, *supra*, 62 Cal.2d at pp. 186-187.)

In sum, *In re Norwalk Call* does not create the rule posited by Press-Enterprise— there is not an "automatic qualification" rule. Under *In re Norwalk Call*, Press-Enterprise would need to show that it operated the newspaper in the unincorporated area that became Corona. (*In re Norwalk Call*, *supra*, 62 Cal.2d at pp. 187, 189-190.)

We now apply the substantial evidence standard in determining whether Press-Enterprise sufficiently established it operated the newspaper in the unincorporated area that became Corona. (See *Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632 [substantial evidence standard applies to factual issues].) Press-Enterprise provides evidence that it circulated the newspaper in Corona and published a notice of sale relevant to Corona, but does not provide evidence that it printed or produced the newspaper in Corona. Since *In re Norwalk Call* retains the production/location requirement, we find Press-Enterprise's argument to be unpersuasive because it has not shown a production connection with Corona.

Further, when Corona incorporated, presuming the Press-Enterprise's newspaper was the sole newspaper in the area, Corona residents could have still had the means to publish legal notices. For example, the law provides that if there is no newspaper of general circulation for a city, then a legal notice may be published "in some other newspaper of general circulation published in the same county, if there is one, and if there is none, or if publication in such newspaper is refused, then, in lieu thereof, in some other newspaper of general circulation published in an adjacent county or in such other newspaper as the court shall direct." (§ 6021, subd. (b).) Thus, Corona residents presumably could have still published legal notices in a newspaper of general circulation for the County, if there was not a newspaper of general circulation specifically for the newly incorporated City of Corona.

D.     PUBLISHED NOTICE

The case *Press Democrat* concerns a newspaper known as the "Sonoma County Herald Recorder" (Herald Recorder). (*Press Democrat*, *supra*, 207 Cal.App.4th at p. 580.) In 1953, the Herald Recorder was adjudicated a newspaper of general circulation for Santa Rosa in Sonoma County. (*Id.* at pp. 580-581.) In 2010, a competing newspaper, the "Press Democrat," moved to vacate the Herald Recorder's adjudication. (*Id.* at p. 580.) The Press Democrat argued the Herald Recorder was no longer a newspaper of general circulation, in part, because the Herald Recorder was printed in Los Angeles. (*Id.* at pp. 581-582.) The Herald Recorder asserted it was not required to be printed in the City of Santa Rosa pursuant to section 6006 because it was a newspaper of general circulation prior to 1923. (*Press Democrat*, at p. 582.)

17

As evidence that the Herald Recorder met the requirements of section 6006, the newspaper's publisher declared the Herald Recorder was established in 1899 and published five days per week. The publisher also provided a March 24, 1906, edition of the newspaper containing a school bond election notice, which the publisher declared "'appear[ed] to be a legal notice.'" The publisher also provided a May 30, 1949, edition of the newspaper, which contained three pages of legal notices, such as notices of trustee sales and notices to creditors. (*Press Democrat*, *supra*, 207 Cal.App.4th at p. 583.) The Press Democrat argued the Herald Recorder did not show it was an established newspaper of general circulation prior to 1923 because it did not demonstrate that it was printing legal notices prior to 1923. (*Ibid.*) The Press Democrat asserted the 1906 school bond notice was not a legal notice because such notices could be printed in any newspaper in the county—the law did not require such notices to be printed in a newspaper of general circulation. (*Id.* at pp. 584-585.) The trial court denied the Press Democrat's motion to vacate. (*Id.* at p. 585.)

The appellate court reversed the judgment. (*Press Democrat*, *supra*, 207 Cal.App.4th at p. 590.) The court explained the Herald Recorder bore the burden of proving it came within section 6006. (*Press Democrat*, at pp. 586-587.) The appellate court concluded the Herald Recorder failed to meet its burden because it did not demonstrate the 1906 school bond notice "was a 'legal notice' required to be published in a newspaper of general circulation." (*Id.* at p. 588.) Therefore, the appellate court concluded the Herald Recorder provided no evidence that it published legal notices before 1923. (*Ibid.*) The appellate court wrote, "In the absence of any evidence that it

18

published legal notices before 1923, the Herald Recorder failed to satisfy the requirements of section 6006 because it did not establish it published "'local or telegraphic news and intelligence of a general character'" before 1923 or that it had a bona fide subscription list of paying subscribers in 1923." (*Ibid.*) The appellate court held the Herald Recorder's adjudication as a newspaper of general circulation in Santa Rosa and Sonoma County must be vacated because the newspaper was printed in Los Angeles. (*Ibid.*)

Press-Enterprise provided advertisement sections from 1895 and 1919 editions of the newspaper; however, the print is too small to read. Press-Enterprise does not assert the advertisements relate to Corona, and does not provide any legal citation reflecting the advertisements are legal notices required to be printed in a newspaper of general circulation.

Press-Enterprise also provided (1) an advertisement section from a 1922 edition of its newspaper, and (2) an enlarged portion of the section reflecting a notice of sale. The notice of sale reflects it concerns the estate of Mary A. Middlesworth, an incompetent person. The guardian of Ms. Middlesworth's person and estate planned to sell Ms. Middlesworth's interest in real property located in Corona. The sale was scheduled to take place in the City of Riverside.

In the body of Press-Enterprise's discussion, it does not describe the notice of sale as a legal notice required to be published in a newspaper of general circulation. Rather, Press-Enterprise asserts the notice of sale demonstrates the newspaper was "regularly disseminat[ing] information directly affecting Corona residents, serving the

function of a newspaper of general circulation in the area." So, it would appear Press-Enterprise is not asserting the 1922 notice is a legal notice establishing the Press-Enterprise must have, ipso facto, been a newspaper of general circulation in Corona prior to 1923. However, in the conclusion section of its respondent's brief, Press-Enterprise asserts the 1922 notice of sale was "a legal notice." Thus, it is unclear from Press-Enterprise's brief if it is asserting (1) the 1922 notice of sale is a legal notice that proves, ipso facto, the newspaper was a newspaper of general circulation in Corona prior to 1923; or (2) the 1922 notice of sale proves the newspaper was disseminating general information relevant to Corona. We address both possibilities.

In regard to the notice of sale being a legal notice, Press-Enterprise has not provided a legal citation reflecting a notice of sale of an incompetent person's real property was, in 1922, required to be printed in a newspaper of general circulation. Press-Enterprise asserts Sentinel has placed too much emphasis on the issue of whether the notice of sale was the type required to be published in a newspaper of general circulation. We would infer from this argument that Press-Enterprise is conceding the notice of sale is not a legal notice that needs to be published in a newspaper of general circulation; however, this inference is complicated by Press-Enterprise's conclusion wherein it describes the notice of sale as a "legal notice." Due to the lack of legal citation and discussion supporting the conclusion that the notice of sale is a "legal notice," we conclude Press-Enterprise is not intending to assert the notice of sale is a

legal notice.[3]  (See *Atchley v. City of Fresno* (1984) 151 Cal.App.3d 635, 647 [argument forfeited for lack of legal citation and discussion].)

Next, we address the argument that the notice of sale proves the newspaper was disseminating general information relevant to Corona.  Press-Enterprise contends that, in 1923, its newspaper was circulated to 71 subscribers in Corona and regularly published six days per week.

Press-Enterprise is still omitting the primary issue in this case—there is nothing indicating the newspaper was produced in Corona prior to 1923.  So, if everything Press-Enterprise asserts is true and correct—it had 71 Corona subscribers, it was published six days per week, and it provided news of a general character (as proven by the notice of sale)—it is still missing a key component, i.e., the "established, printed and published" requirement.

As explained *ante*, in order to satisfy the section 6006 requirements, a newspaper must have been "an established newspaper of general circulation" prior to 1923. (§ 6006.)  That means the newspaper must have been "published for the dissemination of local or telegraphic news and intelligence of a general character, having a bona fide subscription list of paying subscribers, and which shall have been established, printed

---

[3]  We are not presenting the printing of legal notices as an element required to be proved in order for a newspaper to establish it is a newspaper of general circulation. Rather, the Press-Enterprise has presented legal notices, and we considered whether the Press-Enterprise may be asserting the notices prove the Press-Enterprise must have, ipso facto, been a newspaper of general circulation because it was printing these notices.  In other words, if the required elements cannot be shown, then perhaps proof of legal notices will suffice as alternate proof of establishing a newspaper is a newspaper of general circulation.

and published at regular intervals, in the state, county, city, city and county, or town, where such publication, notice by publication, or official advertising is given or made, for at least one year preceding the date of such publication, notice or advertisement.'" (*McDonald*, *supra*, 187 Cal. at p. 159.)  If the newspaper was not printed in the relevant city, then the "printing" requirement can be satisfied by proof of producing the newspaper in the relevant city, such as by proof that the newspaper's offices are in the relevant city.  (*Id.* at pp. 161-162.)

Since Press-Enterprise is missing proof for the pre-1923 "established, printed and published" requirement, and does not appear to be asserting the 1922 notice of sale is a legal notice required to be printed in a newspaper of general circulation, such that one could reason the newspaper must have, ipso facto, been a newspaper of general circulation, we conclude the section 6006 exception does not apply.[4]

_____

[4] In the age of online news, we question whether it is pragmatic for the Legislature to retain such a specific production/location requirement.  The means by which people receive community news has changed greatly from 1923 to 2015, from printed newspapers to online sources.  Additionally, people are no longer tied to their cities as they once were, often crossing through a variety of cities everyday on their travels to work or other events.  While we analyze the 1923 statute, we question whether it may be time for the Legislature to revisit this statutory scheme in light of how much change has occurred since 1923.

## DISPOSITION

The judgment is reversed.  The trial court is directed to enter an order denying

Press-Enterprise's petition.  Sentinel Weekly News is awarded its costs on appeal.

CERTIFIED FOR PUBLICATION


MILLER

J.


We concur:


McKINSTER

Acting P. J.


KING

J.

23